IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

AMANDA L. OTT, individually ) 
and on behalf of all others similarly ) 
situated, ) 
                  ) 
            Plaintiff, ) 
                  ) 
       v. )        Civil Action No. 3:12-cv-00486
                  ) 
PUBLIX SUPER MARKETS, INC., ) 
                  ) 
           Defendant. ) 
_____ )

## MOTION FOR CONDITIONAL CERTIFICATION AND
## ISSUANCE OF NOTICE WITH MEMORANDUM OF LAW IN SUPPORT

COMES NOW the Plaintiff, by and through undersigned counsel, and hereby moves the

Court for entry of an order (i) conditionally certifying this lawsuit as a collective action under

Section 216(b) of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), (ii) ordering

Defendant to produce last known contact information for the putative sub-classes of opt-in

plaintiffs within fifteen (15) days of the Court's order on certification, and (iii) approving the

proposed "Notice of Rights to Join Publix Overtime Lawsuit" attached hereto as Appendix A and

the proposed "Consent to Join Publix Overtime Lawsuit" attached hereto as Appendix B for

distribution to the putative class of opt-in plaintiffs.

## I.      INTRODUCTION

Plaintiff brings this action on behalf of herself and all current and former FWW

Associates who work or worked in a Publix department (bakery, deli, grocery, meat, produce,

and customer service) within one or more Publix grocery stores and who worked over forty

hours in one or more work weeks during the relevant period (collectively, the "Similarly Situated

Employees") against defendant Publix Super Markets, Inc. ("Publix" or "Defendant") for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA").

Specifically, Plaintiff claims that Defendant's pay policies, practices and procedures, as expressly stated in the same uniform Associate Handbook provided to all employees referred to by Publix as "Fluctuating Workweek Associates" ("FWW Associates") at any of Defendant's grocery store locations, resulted in wide-spread, systemic violations of the overtime provisions of the FLSA by failing to pay the FWW Associates overtime compensation at the correctly calculated regular rate for each overtime work week, because Defendant (1) excluded certain compensation from the calculation of the applicable overtime regular rate for all Hourly and FWW Associates (ex., "Holiday Bonus," "Holiday Pay," "Tuition Reimbursement," etc.) which must be included in the regular rate calculation; and (2) paid FWW Associates on an alleged "fluctuating workweek" arrangement rather than at their properly calculated regular rate for overtime hours without satisfying the requirements for a valid fluctuating workweek plan under 29 C.F.R. § 778.114, including but not limited to by paying FWW Associates non-excludable and/or non-discretionary compensation in addition to a base weekly "salary" that varied in amount from week to week, rather than paying a "fixed weekly amount" that did not vary as required for the regular rate exception under § 778.114.

Plaintiff respectfully requests that the Court allow this case to proceed as a collective action pursuant to 29 U.S.C. § 216(b) and order Defendant to produce the names and contact information of the prospective class members so that notice may be sent to apprise these individuals of their rights to join this collective action. Specifically, Plaintiff requests that the Court approve the issuance of notice to all Similarly Situated Employees who work or worked at any time during three years preceding the date of this motion (the "relevant period").

2

## II. FACTS

### A.     Parties

Defendant operates a chain of over 1,050 grocery stores in Alabama, Florida, Georgia, South Carolina, and Tennessee.[1]  There are six departments within each Publix grocery store: bakery, deli, grocery, meat, produce, and customer service (each a "department" and collectively the "departments").[2]  Publix classifies the following positions as "FWW Associates" within any of its grocery stores: Assistant Department Manager, Department Manager, and Assistant Store Manager (excluding pharmacy).[3]  The Assistant Department Managers and Department Managers work as FWW Associates in a Publix grocery store department.

During her employment with Defendant, Plaintiff Ott worked both as an hourly associate and as a FWW Associate in a Publix grocery store department.[4]

Since the filing of the Complaint in this action Wendy Bauer, a FWW Associate who works in a Publix grocery store department in Alabama, has filed a Consent to Join as an opt-in plaintiff.[5]

### B.     Affidavits In Support of Conditional Certification

This motion is supported by the affidavits of five witnesses, from three states (Tennessee, Alabama, and Georgia), many of whom worked as FWW associates (some in multiple FWW positions) in multiple store locations during their respective periods of employment.  During the three year period preceding the filing of her Complaint in this action, Plaintiff Ott worked as a FWW Associate in more than one Publix grocery store locations: first at the Hermitage,

---

[1] Amended Complaint [Doc. 26] ("Complaint"), ¶ 10, p. 185; see http://www.publix.com/about/FactsAndFigures.do.
[2] Amended Complaint [Doc. 26], ¶ 3, p. 184.
[3] Affidavit of Jessica Kist ("Kist Aff."), [Doc. 52], ¶ 3.
[4] Affidavit of Amanda L. Ott ("Ott Aff.") [Doc. 32], ¶¶ 4–5, pp. 356-57.
[5] Notice of Filing Opt-In Consent [Doc. 49].

Tennessee location, then at the Mount Juliet, Tennessee location.[6]  Wendy Bauer worked as an hourly associate, and then as a FWW Associate at three different Publix grocery store locations: the University Boulevard store in Tuscaloosa, Alabama; Northport, Alabama; and then a different store in Tuscaloosa, Alabama.[7]  Erin Knights worked as an hourly associate in Publix grocery store locations in Hendersonville, Tennessee and Gallatin, Tennessee.[8]  Jessica Kist worked for Publix in seven different stores, for eight different placements, for the period from 1997 through August, 2012, working in consecutive order of placements at Store Nos. 469 (Hourly Associate), 519 (Assistant Customer Service Manager), 49 (Customer Service Manager), 1130 (Customer Service Manager), 721 (Customer Service Manager), 1060 (Assistant Store Manager), 1089 (Assistant Store Manager), and then back to 721 (Assistant Store Manager).[9]  Ms. Kist held what Publix calls a "FWW Associate" position within a Publix grocery store department as an Assistant Customer Service Manager (approximately 2003-04) and Customer Service Manager (approximately 2004-09), and then held a FWW Associate position as Assistant Store Manager (approximately 2009-2012) which is a level above the Publix grocery store department FWW Associate positions.  Barbara Mazzella worked for Publix as an hourly associate in the Franklin, Tennessee grocery store location.[10]

     C.     **Publix's Centralized Payroll and Personnel Policies**

     1.     <u>Publix Classifies All FWW Associates As Non-Exempt Under The FLSA.</u>

Throughout the relevant period, Publix on a company-wide basis has classified (and continues to classify) its FWW Associates in its grocery store departments as non-exempt and

---

[6] *Id.*
[7] Affidavit of Wendy Bauer ("Bauer Aff.") [Doc. 51], ¶ 4.
[8] Affidavit of Erin Knights ("Knight Aff.") [Doc. 33], ¶ 4, p. 490.
[9] Kist Aff. [Doc. 52], ¶¶ 2-3.
[10] Affidavit of Barbara Mazzella ("Mazzella Aff.") [Doc. 34, ¶ 3, p. 621.

covered by the overtime requirements of the FLSA.[11]  This is not a misclassification case, and Plaintiff agrees with Publix's classification of its FWW Associates as non-exempt.  Instead, this case alleges company-wide regular rate violations based on centralized pay policies.

        2.      The Pay Practices At Issue Are Centralized And Uniform Company-wide.

Publix governs and pays all employees, including but not limited to Plaintiff, opt-in Plaintiff Bauer, and the Similarly Situated Employees, according to the universal, centralized policies and practices that are stated in the uniform Your Associate Handbook ("Handbook").[12] All Publix employees, including but not limited to FWW Associates, receive the same Handbook, for all stores in all states regardless of job title, method of compensation, or location.[13]  Publix has admitted that it provides information regarding compensation of FWW Associates in the document entitled "Your Associate Handbook," and specifically in the May 1, 2009, June 12, 2010,[14] and January 1, 2011 editions at issue in this lawsuit (collectively the "Handbook").[15]  Even Store Managers cannot deviate from Publix's compensation or benefits set

---

[11] Bauer Aff. [Doc. 51], ¶ 22 ("The Publix handbook for managers, entitled the Manager's Reference Library ("MRL"), explicitly states that all FWW Associates (Assistant Department Managers, Department Managers, and even Assistant Store Managers) are non-exempt from overtime requirements under the law:

       Non-exempt associates are eligible for overtime pay and include hourly-paid and Fluctuating Work Week (FWW) associates.  FWW associates include the Assistant Store Manager and retail department and assistant department managers (excluding Pharmacy).
       *       *       *
       Salaried associates are exempt from overtime pay requirements.  These associates include Store Managers, salaried Pharmacists and weekly salaried and monthly-paid associates in support areas (Distribution, Manufacturing or Office).

(MRL, "Time Administration")"); *see also* Kist Aff., [Doc. 52], ¶ 3 ("all Assistant Department Managers [and] Department Managers . . . company-wide, regardless of store location, are classified by Publix as FWW Associates who are non-exempt and therefore entitled to overtime pay for hours worked over forty in a work week.").
[12] Bauer Aff. [Doc. 51], ¶¶ 9, 13; Knights Aff. [Doc. 33], ¶ 9; Mazzella Aff. [34], ¶ 9; Ott Aff. [Doc. 32], ¶ 9; Kist Aff. [Doc. 52], ¶¶ 4, 21.
[13] Bauer Aff. [Doc. 51], ¶¶ 6, 11, 18; Kist Aff. [Doc. 52], ¶¶ 4, 13; Knights Aff. [Doc. 33], ¶¶ 6, 12; Mazzella Aff. [Doc. 34], ¶¶ 6, 12; Ott Aff. [Doc. 32], ¶¶ 6, 12.)
[14] Defendant's use of a "June 12, 2012" date throughout its Answer [Doc. 19] rather than the actual "June 12, 2010" publication date appears to be a typographical error.
[15] Answer to Amended Complaint ("Answer") [Doc. 37] ¶ 14-17, pp. 647-48.

forth in the Handbook.[16]  Payroll is computerized from Publix corporate, and Store Managers do

not have the ability to override or alter calculation of compensation or benefits.[17]

Publix's own affidavit of its witness Stephanie Painter, Publix's Payroll Manager in its

corporate headquarters in Lakeland Florida, submitted in opposition to its previous motion to

transfer in this case, attests to the centralized nature of Publix's pay (and personnel) practices:

> 2.     My job as a Payroll Manager includes but is not limited to:
> receipt and review of all time and attendance records; calculation
> of all taxable and non taxable gross wages for associates' payment;
> deductions withheld or calculated based on legal requirements
> and/or the associates (sic) elections; providing all payment and
> deductions to the appropriate departments based on each payroll
> cycle; and issuing direct deposit files and pay check (sic) as
> requested by each associate based on their pay cycle.
>
> 3.     I am aware through my position as Payroll Manager that,
> during the period 2009 to the present, Publix' (sic) corporate
> headquarters has been located in Lakeland, Polk County, Florida.
>
> 4.     The individuals responsible for making substantive
> decisions related to wage payments, premium payments, bonus
> plans, bonus computations and pay practices, including those
> responsible for creating and drafting bonus and compensation
> plans, are based in Lakeland, Florida.  Documents relating to
> compensation and payment calculations, including the underlying
> data that forms the basis for the bonus and compensation
> payments, are maintained in Lakeland, Florida.
>
> 5.     Wage statements originated, were processed in, and issued
> from Publix's accounting and billing statements from the
> Lakeland, Florida office.
>
> 6.     The Human Resources Department, which is based in
> Lakeland, has responsibility for maintaining original formal and
> final disciplinary documents of store-level associates.  As a result,
> official corporate personnel files are located in Lakeland, Florida.
>
> 7.     The individuals responsible for designing the formal
> training programs regarding the primary job duties of Publix
> associates are located in Lakeland.   As well, the individuals

---

[16] Kist Aff. [Doc. 52], ¶ 21; Bauer Aff. [Doc. 51], ¶ 22.
[17] Id.

responsible for developing the job descriptions of Publix associates are located in Lakeland.[18]

Plaintiff Ott, opt-in Plaintiff Bauer, and other affiants testified that they received "Holiday Bonus" pay and "Holiday Pay" and the quarterly "Retail Bonus" (and for Department Managers, a "year end bonus") in addition to their regular wages as FWW Associates in Publix grocery store departments, and were eligible to receive additional compensation such as a "CQI bonus" and "Tuition Reimbursement."[19] Publix's company-wide policy documents, including the Handbook for all associates as well as the Manager's Reference Library ("MRL") policy manual for use by non-hourly associate "managers" such as FWW Associates, confirm that the only compensation that goes into the calculation of regular rate for overtime compensation is the "base salary" (reflected on paystubs as "FWW Pay").[20] Defendant admits that "FWW Associates are paid a "base salary" for all hours worked during the week, plus half-time pay for hours worked over 40 in a workweek.[21] Publix further admits that FWW Associates are eligible for a quarterly retail bonus, the Holiday Bonus, and Holiday Pay in the amount of one-fifth of their base weekly salary," that "the Holiday Bonus is . . . excluded from regular rate calculations," and that "Holiday Pay is . . . excluded from regular rate calculations."[22]

3. The Training, Job Duties, and Responsibilities of Plaintiff and the Putative Class Members Are Uniform Company-Wide And Centrally Determined.

All Publix hourly associates are required to attend a centralized orientation at a centralized location.[23] All of this training is based on a master script, which comes from a corporate book created by Publix corporate, along with centralized videos played at each

---

[18] Declaration of Stephanie Painter ("Painter Aff.") [Doc. 23], ¶¶ 2-7, pp. 172-73.
[19] Kist Aff. [Doc. 52], ¶ 9; Ott Aff. [32], ¶ 21; Ott Aff. [Doc. 51], ¶¶ 14-17.
[20] Kist Aff. [Doc. 52], ¶ 6; Bauer Aff. [Doc. 51], ¶ 22.
[21] Answer [Doc. 37], ¶ 17.
[22] Id., ¶¶ 17, 19, 22.
[23] Kist Aff. [Doc. 52], ¶ 16.

orientation.[24]   Similarly, all FWW Associates receive the same, company-wide, centralized training materials regardless of their location.[25]

Each Publix store has the same six departments.[26]   Each department at each store has hourly associates, an Assistant Department Manager, and a Department Manager.[27]   The essential functions of the job within the same job class do not change from store to store or from state to state.[28] As a result, an employee can be transferred from one store or one state to another under the same job classification without having to be retrained.[29]

Even among different job classifications within the same grocery store department, the job duties are largely the same. Wendy Bauer, who has worked for Publix as an hourly associate, then Assistant Bakery Manager, and eventually Bakery Manager states: "As an Assistant Department Manager, my job duties were basically the same as when I was an hourly employee. I engaged in customer service, baking, and decorating. I also handled customer complaints. I did not have any input on decisions about hiring or firing employees."[30]

At each Publix store, the Store Manager is in charge of the store.[31]   If the Store Manager is not in the building, but the Assistant Store Manager is in the building, then the Assistant Store Manager is temporarily in charge of the store.[32]   If neither is present, then according to Publix policy, the Customer Service Manager is temporarily in charge of the store.[33]   If neither of those three is present, then the Grocery Manager is temporarily in charge of the store.[34]   FWW

---

[24] *Id.*
[25] *Id.*; Bauer Aff., ¶ 19.
[26] Kist Aff. [Doc. 52], ¶ 17.
[27] *Id.*
[28] Id. at ¶ 12.
[29] *Id.*
[30] Bauer Aff. [Doc. 51], ¶¶ 13-14.
[31]  Kist Aff. [Doc. 52], ¶ 18.
[32] *Id.*
[33] *Id.*
[34] *Id.*

Associate Department Managers are rarely, if ever, in charge when customers are in the building.[35] The Store Manager is ultimately responsible for (and accountable for) every aspect of the store and everything that happens in the store.[36]

Assistant Department Managers and Department Managers are also not authorized to deviate from Publix corporate's recipes, presentation, layout in packaging, etc., without receiving approval from their Store Manager, who would have to get approval from his or her manager.[37]

## ARGUMENT AND CITATION OF AUTHORITY

## I.    THE LENIENT STANDARD FOR CONDITIONAL CERTIFICATION

This Court summarized the lenient standard for conditional certification in *Coats v. Nashville Limo Bus, LLC*, No. 3-10-0759, 2011 WL 308403, **1-2 (M.D. Tenn., Jan. 27, 2011) (Campbell, J.), stating:

> The FLSA provides that a collective action may be maintained against any employer by any one or more employees for and in behalf of themselves and other employees similarly situated. 29 U.S.C. § 216(b).[FN2] Once a collective action is certified, employees seeking to join the class must affirmatively opt into the litigation by filing a written consent with the court. *Id.*
>
> > [FN2.] Because the statute only requires that employees be similarly situated, plaintiffs seeking to certify a collective action under the FLSA face a lower burden than those seeking to certify a class action under Fed.R.Civ.P. 23. *Benson v. Asurion Corp.*, 2010 WL 4922704 at * 2 (M.D.Tenn. Nov.29, 2010).
>
> The court must first consider whether the plain-tiffs have shown that the employees to be notified are, in fact, similarly situated. If the plaintiffs meet this burden, then the court may use its discretion to authorize notification of similarly situated employees to allow them to opt into the lawsuit. *Wlotkowski v. Michigan Bell Telephone Co.*, 267 F.R.D. 213, 217 (E.D.Mich.2010). Courts generally use a two-phase inquiry to determine whether the lead

---

[35] *Id.*
[36] *Id.*
[37] Kist Aff. [Doc. 52], ¶ 20; Bauer Aff. [Doc. 51], ¶ 21.

plaintiffs and the opt-in plaintiffs are similarly situated. *Id.; Comer v. Wal–Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir.2006). The first stage of the certification takes place early in the litigation, at the beginning of discovery. The second occurs after all of the opt-in forms have been received and discovery has concluded. Id.

At this first stage, the plaintiffs bear the burden of showing that the other employees are similarly situated. At that point, the certification is conditional and by no means final. *Comer*, 454 F.3d at 546–67. The plaintiffs must show only that their position is similar, not identical, to the positions held by the putative class members. Id. In Comer, the court noted that conditional certification need only be based on a modest factual showing and that the court should use a fairly lenient standard that typically results in certification. *Id.*[FN3]

> [FN3.] At the second stage, following discovery, the Court must examine more closely the question of whether particular members of the class are, in fact, similarly situated. *Comer*, 454 F.3d at 546.

To be considered similarly situated, it is sufficient if the plaintiffs' claims are unified by common theories of the defendant's statutory violations, even if the proofs of those theories are inevitably individualized and distinct. *Wlotkowski*, 267 F.R.D. at 217. Accordingly, district courts generally allow the lead plaintiffs to show that the potential claimants are similarly situated by demonstrating that they and the potential plaintiffs together were the victims of a common policy or plan that violated the law. *Id.* The first stage is fairly lenient, and the court does not resolve factual disputes, decided substantive issues going to the ultimate merits, or make credibility determinations. *Id.*

Judge Trauger recently clarified that the Sixth Circuit has not adopted a "showing of interest" requirement, and found persuasive district court opinions holding that requiring the plaintiff to show that others want to join in order to send them notice asking if they want to join "puts the cart before the horse," and would undermine the broad remedial goal of the FLSA and its Section 216(b) collective action procedure. *Ware v. T-Mobile USA*, 828 F. Supp. 2d 948, 955 (M.D. Tenn. 2011). Courts in this Circuit have therefore found plaintiffs to have satisfied the lenient standard for conditional certification by submitting multiple affidavits, the company-wide

employee handbook establishing the alleged FLSA violations at issue, or a combination of both. *See., e.g., Johnson v. ECT Contracting*, No. 3:09-0130, 2010 WL 625390 (M.D. Tenn., Feb. 18, 2010) (granting conditional certification of company-wide installer collective action based on three identical affidavits and one opt-in affidavit); *Hynds v. Service Tech Corp.*, No. 1:08CV3001, 2009 WL 3614950 (N.D. Ohio, Sep. 29, 2009) (finding four affidavits plus company-wide handbook stating common violations satisfied standard for conditional certification).

## II. PLAINTIFF ALLEGES COMPANY-WIDE PAY POLICIES THAT VIOLATE THE FLSA IN THE SAME WAY AS TO ALL FWW ASSOCIATES.

Plaintiff alleges that she and the Similarly Situated Employees worked over forty hours per week on one or more occasions, but suffered regular rate violations regarding the calculation of their overtime compensation when they worked overtime.[38] Specifically, Plaintiff claims that Publix's pay policies, practices and procedures, as expressly stated in the same uniform Handbook provided by Publix to all FWW Associates at any of its grocery store locations, resulted in wide-spread, systemic violations of the overtime provisions of the FLSA by failing to pay the FWW Associates overtime compensation at the correctly calculated regular rate for each overtime work week, because Defendant (1) excluded certain compensation from the calculation of the applicable overtime regular rate for all Hourly and FWW Associates (ex., "Holiday Bonus," "Holiday Pay," "Tuition Reimbursement," etc.) which must be included in the regular rate calculation; and (2) paid FWW Associates on an alleged "fluctuating workweek" arrangement rather than at their properly calculated regular rate for overtime hours without satisfying the requirements for a valid fluctuating workweek plan under 29 C.F.R. § 778.114, including but not limited to by paying FWW Associates non-excludable and/or non-discretionary

---

[38] Complaint [Doc. 26], ¶ 31, p. 190.

compensation in addition to a base weekly "salary" that varied in amount from week to week, rather than paying a "fixed weekly amount" that did not vary as required for the regular rate exception under § 778.114.

A. Publix Cannot Satisfy The Requirements For The "Fluctuating Work Week" Exception To The Default Regular Rate For Overtime Compensation.

An employer may only take advantage of the FWW method,[39] which results in less overtime pay per hour the more hours an employee works, if each of the following requirements of 29 C.F.R. § 778.114(a) is satisfied:

> An employee employed on a salary basis may have hours of work which fluctuate from week to week and the salary may be paid him pursuant to an understanding with his employer that he will receive such fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many. Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period, such a salary arrangement is permitted by the Act if the amount of the salary is sufficient to provide compensation to the employee at a rate not less than the applicable minimum wage rate for every hour worked in those workweeks in which the number of hours he works is greatest, and if he receives extra compensation, in addition to such salary, for all overtime hours worked at a rate not less than one-half his regular rate of pay. Since the salary in such a situation is intended to compensate the employee at straight time rates for whatever hours are worked in the workweek, the regular rate of the employee will vary from week to week and is determined by dividing the number of hours worked in the workweek into the amount of the salary to obtain the applicable hourly rate for the week. Payment for overtime hours at one-half such rate in addition to the salary satisfies the overtime pay requirement because such hours have already been compensated at the straight time regular rate, under the salary arrangement.

---

[39] The employer bears the burden of proof as to the validity of its FWW overtime pay arrangement, which is to be narrowly construed. *See Cowan v. Treetop Enterprises, Inc.*, 163 F. Supp. 2d 930 (M.D. Tenn. 2001) (citing with approval decisions finding employer bears burden of proof as to validity of FWW overtime arrangement as an exemption).

Thus, in order to comply with the FWW exception to the regular rate calculation, the employer must prove that 1) the employee's hours fluctuate from week to week, (2) the employee receives a fixed weekly salary that remains the same regardless of the number of hours worked per week; (3) the fixed salary is sufficient to provide compensation at a regular rate not less than the legal minimum wage; (4) the employee receives at least 50 percent of his regular rate for all overtime hours worked; and (5) the employer and the employee have a clear mutual understanding that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek. *Adveva v. Interteck Caleb Brett, Inc.*, 2010 U.S. Dist. LEXIS 1963, *2 (D.N.J. Jan. 11, 2010); *see* 29 C.F.R. § 778.114(a).

   1. <u>Underpayment Due To Regular Rate Violations Invalidates The FWW</u>.

  "The keystone of Section 7(a) [of the FLSA] is the regular rate of compensation." *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424, 65 S.Ct. 1242, 89 L.Ed. 1705 (1945). "The Supreme Court has described it as the hourly rate actually paid the employee for the normal, nonovertime workweek for which he is employed—an 'actual fact.'" 29 C.F.R. § 778.108.

  Plaintiff alleges that Publix committed regular rate violations resulting in underpayment of overtime. By so doing, Publix necessarily failed to pay the employee at least 50 percent of his or her regular rate as required for a valid FWW exception. *See Ayers v. SGS Control Services, Inc.*, No. 03 Civ. 9077 RMB, 2007 WL 646326, at *12 (S.D.N.Y., Feb. 27, 2007) (employer's failure to include certain compensation in regular rate calculation resulting in underpayment of overtime violates § 778.114's requirement that employee received in addition to his salary at least 50 percent of his regular rate for all overtime hours worked). Although Publix will address the regular rate violations more fully in later proceedings, the following summary establishes

sufficient company-wide allegations of regular rate violations (i) to issue notice based on regular rate violations themselves, and (ii) to issue notice based on invalidation of the FWW exception to the regular rate calculation for all overtime pay, both of which resulted in underpayment of overtime pay for overtime hours worked by FWW Associates.

        a.   The "Holiday Bonus" Was Illegally Excluded From The Regular Rate For Overtime Payments To FWW Associates.

Among the narrow exceptions from compensation that must be included in the regular rate calculation is Section 7(e)(1), which permits employers to exclude from the regular rate "payments in the nature of gifts made at Christmas time or on other special occasions." However, 29 CFR § 788.212 states that to qualify for exclusion under section 7(e)(1) "the bonus must be actually a gift or in the nature of a gift. . . . *Obviously, if the bonus is paid pursuant to contract (so that the employee has a legal right to the payment and could bring suit to enforce it), it is not in the nature of a gift.*"  (emphasis added)

The Handbook sets forth the detailed requirements for monthly "Holiday Bonus" accumulation and accrual, and also states "if you receive an advance of holiday bonus pay before it is accrued, such payment constitutes an advance against your pay. If your employment ends before the benefits are accrued (the issue date of the bonus check), the advance may be recovered from your wages. As with any kind of loan or advance, if full recovery is not possible, you're responsible for paying the remaining amount back to Publix. If your employment ends on or before the issue date of the bonus check, you're responsible for repaying Publix any amount previously paid to you that was not accrued."[40]  Thus, the Holiday Bonus is contractual.

It is not, however, pay for "occasional periods where no work is performed due to . . . holiday . . . or other similar causes" as required for exclusion under Section 7(e)(2).  Instead,

---

[40] *See, e.g.,* Handbook [Doc. 32-1] at 4-6 -4-10, p. 433-37.

because "Holiday Bonus" amounts accrue each month regardless of whether there were one or more holidays in that particular month (or no holidays at all), "Holiday Bonus" payments are actually "longevity" bonuses for remaining employed each month through the end of the year, unrelated to actual holidays. *See Featsent v. City of Youngstown*, 70 F.3d 900, 904-05 (6th Cir. 1995) (holding longevity bonuses must be included in regular rate, as well as education bonuses, finding "Section 7(e)(2) does not exclude every payment not measured by hours of employment from the regular rate [Cit.] . . . . In fact, the 'similar payments' clause of Section 7(e)(2) was not intended to exclude bonuses from inclusion in the regular rate when those bonuses are understood to be compensation for services even when they are 'not directly attributable to any particular hours of work.' 29 C.F.R. § 778.224(a)."); *Hart v. City of Alameda*, No. C-07-5845, 2009 WL 1705612 (N.D. Cal. June 17, 2009) (granting plaintiffs' motion for summary judgment, holding "holiday compensation" paid to police officers every pay period regardless of whether they worked a holiday or not (or whether a holiday occurred during the pay period or not) could not be considered to be a payment made "due to a holiday" and therefore could not be excluded from the regular rate calculation)

        b.  Publix's "Holiday Pay" Was Illegally Excluded From The Regular Rate For Overtime Payments to FWW Associates.

Publix pays FWW associates 1/5[th] of their base weekly salary as "Holiday Pay," conditioned upon the employees working at least 50% of the last scheduled day before, of, and next scheduled day after the Publix-recognized holiday if scheduled to work on a Publix holiday; or if the associate was not scheduled to work on a Publix holiday, then in order to earn Holiday Pay, the associate must work at least 50% of their last scheduled day before the Publix holiday, and at least 50% of their next scheduled day after the Publix holiday.[41]

---

[41] Kist Aff. [Doc. 52], ¶ 9.

Pursuant to the narrow exception in Section 7(e)(6), premiums paid for work performed on Sundays or holidays can only be excluded from the regular rate calculation if it is "paid for work by the employee on Saturdays, Sundays, holidays . . . *where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days*." But Publix admits that it does not pay Holiday Pay at one and one-half times the employees' regular rate, and instead pays a lump sum – 1/5[th] of weekly "salary."[42] In addition to the failure to pay at one and a half the rate, payment of a lump sum that is not tied to and does not vary with the number of hours actually worked can never satisfy the Section 7(e)(6) exclusion. *See Dooley v. Liberty Mut. Ins. Co.*, 369 F. Supp. 2d 81, 85-86 (D. Mass. 2005) (holding because employer paid a premium for Saturday hours as a lump sum amount rather than as a premium hourly rate, the Saturday pay did not constitute "premium pay" under Section 7(e)(6) of the FLSA and therefore could not be excluded from the regular rate calculation, citing 29 C.F.R. §§ 778.310 and 778.207(b)); *see also Ayers*, *supra,* 2007 WL 646326 at **9-10 ("lump sum premiums which are paid without regard to the number of hours worked are not overtime premiums and must be included in the regular rate", citing 29 C.F.R. § 778.207(b)).

c. Publix's Pay Policies Contain Other Regular Rate Violations Affecting FWW Associates' Pay.

FWW Associates are also eligible to receive additional compensation under Publix's "Tuition Reimbursement Program."[43] Because the tuition reimbursement program for grocery store department employees is reimbursement of an expense normally paid by the employee, this benefit amount must be included in the calculation of the regular rate. *See, e.g., Adoma v. University of Phoenix, Inc.*, 779 F. Supp. 2d 1126 (E.D. Cal. 2011) (holding internal tuition

---

[42] Answer [Doc. 37], ¶ 22, p. 649.
[43] Kist Aff. [Doc. 52], ¶ 9.

program by online university was for benefit of employees not employer, value of which must be included in regular rate calculation for overtime pay during affected weeks). And FWW Associates are eligible to receive (and affiant Kist did in fact receive) a CQI Bonus payment, which is reported by Publix as taxable wages but not included in the regular rate calculation.[44]

>2. Failure to Pay A Fixed Weekly Amount For Straight Time Hours Precludes Application Of The FWW Exception.

A valid FWW pay arrangement requires payment of a "fixed salary" described by 29 C.F.R. § 778.114 as a "*fixed amount as straight time pay for whatever hours he [or she] is called upon to work in a workweek, whether few or many*." (Emphasis added). Publix's payment of a non-discretionary quarterly retail bonus, Holiday Bonus, Holiday Pay, etc. causes the fixed amount of straight time pay that FWW Associates receive each week to vary. The FWW regulation's requirement of a "fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, whether few or many" as uniformly interpreted and applied by the courts, does not allow for the payment of "non-overtime premiums" in conjunction with the FWW. "Non-overtime premiums" are those premiums and bonuses paid to employees that are not excluded by the terms of the FLSA from inclusion in the regular rate under Section 7(e).

Courts that have considered the impact of "non-overtime premiums" on the FWW regular rate exception have found they are inconsistent with the FWW, because they violate the plain language of § 778.114 requiring fixed pay for straight time work in that payment of these premiums directly changes the amount of straight time pay and the regular rate. *See, e.g., O'Brien v. Town of Agawam*, 350 F.3d 279, 288 (1st Cir. 2003) (finding non-overtime shift differentials violate § 778.114 and invalidate FWW agreement, holding "it is not enough that the officers receive a fixed *minimum* sum each week; rather, to comply with the regulation, the

---

[44] Kist. Aff. [Doc. 52], ¶ 9.

Town must pay each officer a "fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, *whether few or many,*" recognizing salary did not constitute all straight-time compensation received each week and the weekly pay amount varied); *Dooley, supra*, 369 F. Supp. 2d 81, 85-86 (D. Mass. 2005) (premiums in addition to straight-time pay for working non-overtime hours on Saturdays invalidated FWW, as to lump sum that was improperly excluded from regular rate but even as to premium paid as an hourly rate which was excludable from regular rate, because premium pay violated the fixed straight time pay requirement for valid FWW arrangement); *Ayers v. SGS Control Services, Inc.*, 2007 U.S. Dist. LEXIS 19634, * 33 (S.D.N.Y. Feb. 26, 2007) (payments for sea pay or day-off pay which must be included in regular rate increased straight-time pay under Section 778.114(a), thus "any Plaintiff who received sea pay or day-off pay did not have 'fixed' weekly straight time pay, in violation of 29 C.F.R. § 778.114(a)."); *Adeva v. Interteck Caleb Brett, Inc.*, 2010 U.S. Dist. LEXIS 1963 (D.N.J. Jan. 11, 2010) (holding salary plus day off pay, off shore pay, and premium holiday pay could not result in a fixed amount as straight-time pay: "If the regulation merely required that employees received a minimum salary every week, which could be increased by such bonuses, then Defendants' argument would have substantial force. The regulation, however, contains no such thing. Consequently, the Court holds that Defendants are precluded from using FWW method of payment as such premiums and bonuses run afoul of the 'fixed salary' requirements of 29 C.F.R. § 778.114(a)."); *Brumley v. Camin Cargo Control, Inc.*, 2010 WL 1644066, *12 (D.N.J. April 22, 2010) (holding salary plus premium holiday pay and day off pay "results in the absence of a 'fixed salary' required by the [FWW] regulations.").

Finally, payment of non-discretionary quarterly retail bonuses (and year-end bonuses) necessarily cause straight time pay for non-overtime hours worked each week, and therefore

similarly violate the "fixed amount" requirement under 29 C.F.R. § 778.114. *Cf., West v. Verizon Servs. Corp.*, No. 8:08-cv-1325-T-33MAP, 2011 WL 208314 (M.D. Fla. Jan. 21, 2011) (holding that "[plaintiff's] salary was not 'fixed' because she received various bonus payments and commissions" and therefore employer could not satisfy FWW regulation, granting plaintiff's motion for summary judgment and ruling that plaintiff's overtime damages would be calculated at time and a half rather than FWW half-time).

3.      There Can Be No Clear Mutual Understanding If The Regular Rate Agreement Violates The FLSA.

As stated above, Plaintiff alleges regular rate violations, in which Publix did not agree to pay (and did not in fact pay) even the FWW half-time overtime payments at time and a half the required regular rate under the FLSA. Parties cannot reach private agreement to a contract that results in regular rate violations of the overtime laws under the FLSA. *See Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 745, 101 S. Ct. 1437, 67 L. Ed. 2d 641 (1981) (an individual employee's right to overtime pay under the Act is non-waivable, thus "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate."); *Walling v. Harnishfeger Corp.*, 325 U.S. 427, 433, 65 S. Ct. 1246, 89 L. Ed. 1711 (1945) (rejecting employer defense that parties agreed in collective bargaining agreement that regular rate would be base rate exclusive of piece rate incentive payments). Under 29 U.S.C. § 207(e) "and the relevant case law and interpretative regulations, the regular rate cannot be stipulated by the parties; instead, the rate must be discerned from what actually happens under the governing employment contract." *O'Brien*, 350 F.3d at 294 (citing 29 C.F.R. § 778.108 and *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 462–463 (1948)); *see* 29 C.F.R. § 778.500 ("Since the term regular rate is to include all remuneration for employment (except statutory exclusions) ...,

the overtime provisions of the [FLSA] cannot be avoided by setting an artificially low hourly rate upon which overtime pay is to be based and making up the additional compensation due to employees by other means.").

Thus, even if Publix could prove that FWW Associates had a "clear mutual understanding" to receive payment of FWW overtime at .5 of less than the required regular rate, there can be no "clear mutual understanding" as required for FWW-type half-time damages under 29 C.F.R. § 778.114 unless they would receive and were receiving at least one half the required rate of pay for overtime hours worked.  *See, e.g., Blotzer v. L-3 Communications Corp.*, No. CV-11-274-TUC-JGZ, 2012 WL 6086931, *12 (D. Ariz. Dec. 6, 2012) (even if parties had clear, mutual understanding that employees would work 50 hours a week without overtime, this amounts to an illegal agreement not to receive their FLSA entitlement to overtime pay, because parties cannot contract to receive less than the FLSA requires; therefore, no FWW-type damages under § 778.114).

## III. PLAINTIFF HAS MORE THAN SATISFIED THE LENIENT STANDARD FOR CONDITIONAL CERTIFICATION.

Plaintiff's affidavits from associates in three of the five states, including opt-in Plaintiff Bauer and former FWW Associate and Assistant Store Manager Kist, combined with the centralized Handbook[45] and MRL policies, Publix's own witness testimony about centralized pay and personnel policies, and Publix's admissions in its Answer confirming a uniform policy and practice of paying only "fluctuating work week" half-time overtime despite payment of additional "Holiday Bonus," "Holiday Pay," non-discretionary quarterly and year-end bonuses, and other compensation[46] (which necessarily cause the straight time rate of pay for non-overtime

---

[45] *See* Handbooks [Docs. 32-1 and 33-1].
[46] Answer [Doc. 37], ¶¶ 17, 19, 22, 23.

hours to vary),[47] more than satisfy the Sixth Circuit's lenient standard for conditional certification and issuance of notice. *See, e.g., Hynds, supra* (finding four affidavits plus company-wide handbook stating common violations satisfied lenient standard for conditional certification); *Heldman v. King Pharmaceuticals*, No. 3–10–1001, 2011 WL 465764 (M.D. Tenn., Feb. 2, 2011) (Campbell, J.) (conditionally certifying nationwide collective action based on centralized policy applicable to all representatives).

## IV.    THE COURT SHOULD APPROVE AND ORDER THE ISSUANCE OF NOTICE.

The Court should grant Plaintiff's motion and enter an order approving notice to the potential opt-in plaintiffs, in the form of the notice attached hereto as Appendix A. The Court should allow the creation of a case-specific website posting the approved Notice and any approved Consent to Join forms for downloading.

Defendant should also be directed to provide names and last known contact information (last known mailing address, email address, and telephone number) of the class members in a searchable electronic format in order to facilitate notice within fifteen (15) days of an order granting conditional certification of this lawsuit as a collective action. The Supreme Court has directed that a defendant should provide names and addresses of class members in collective action cases. *Hoffman-LaRoche, Inc. v. Sperling,* 493 U.S. 165, 170 (1989). The list should be produced not only for purposes of sending judicial notice, but is discoverable on independent grounds recognized by the United States Supreme Court and the Federal Rules of Civil Procedure governing discovery regarding putative opt-in plaintiffs and witnesses to similar time, pay, and work practices.

---

[47] Kist Aff. [52], ¶9.

## CONCLUSION

Plaintiff therefore respectfully requests that this Court conditionally certify this case to proceed as a collective action, and authorize the issuance of notice to the putative class of FWW Associates who worked in a Publix grocery store department within the relevant period, in the form attached hereto.

*/s/ C. Andrew Head*
Georgia Bar No. 341472
**FRIED & BONDER, LLC**
White Provision, Suite 305
1170 Howell Mill Road, N.W.
Atlanta, Georgia 30318
Telephone: (404) 995-8808
Facsimile: (404) 995-8899
Email: ahead@friedbonder.com

Charles Yezbak, III
Tennessee Bar No. 018965
**YEZBAK LAW OFFICES**
2002 Richard Jones Road, Suite B-200
Nashville, Tennessee 37215
Telephone: (615) 250-2000
Facsimile: (615) 240-2020
Email: yezbak@yezbaklaw.com

David Hughes
Alabama Bar No. 3923-U82D
**HARDIN & HUGHES, LLP**
2121 14th Street
Tuscaloosa, Alabama 35401
Telephone: (205) 344-6690
Facsimile: (205) 344-6188
Email: dhughes@hugheshardin.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I electronically filed a true and correct copy of the foregoing using the CM/ECF filing system, which will send a notice of electronic filing to the following attorneys of record for Defendant:

Wendy V. Miller
Tennessee Bar No. 023500
Attorney for Defendant
**OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.**
401 Commerce Street, Suite 1200
Nashville, Tennessee 37219
Telephone: (615) 254-1900
Facsimile: (615) 254-1908
Email: wendy.miller@ogletreedeakins.com

Michael J. Gray
Illinois Bar No. 06210880
Attorney for Defendant
**JONES DAY**
77 West Wacker
Chicago, Illinois 60601
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
Email: mjgray@jonesday.com

Craig S. Friedman
Georgia Bar No. 335145
Attorney for Defendant
**JONES DAY**
1420 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30309
Telephone: (404) 581-3939
Facsimile: (404) 581-8330
Email: csfriedman@jonesday.com

Edmund J. McKenna
Florida Bar No. 0845922
Attorney for Defendant
**OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.**
100 North Tampa Street, Suite 3600
Tampa, Florida 33602

Telephone: (813) 289-1247
Facsimile: (813) 289-6530
Email: edmund.mckenna@ogletreedeakins.com

*/s/ C. Andrew Head*