IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| AMANDA L. OTT, *et al*, individually and on behalf of all others similarly situated, | ) ) ) | Civil Action No. 3:12-cv-00486 |
| Plaintiff, | ) ) | District Judge Todd J. Campbell |
| v. | ) ) | Magistrate Judge Joe Brown |
| PUBLIX SUPER MARKETS, INC., | ) ) | JURY DEMAND |
| Defendant. | ) ) ) | |

**JOINT MOTION FOR ORDER APPROVING SETTLEMENT AGREEMENT AND TO RE-OPEN OPT-IN PERIOD FOR LIMITED PURPOSE OF SETTLEMENT**

**I.     Preliminary Statement**

Plaintiffs in this case allege that Publix Super Markets, Inc. ("Publix" or "Defendant") failed to pay the required amount of overtime pay to Publix's Department Managers and Assistant Department Managers who were paid overtime based on a "fluctuating workweek" calculation method (collectively the "FWW Associates"). Plaintiffs contend (i) that Publix failed to include certain items of compensation ("Holiday Bonus," "Holiday Pay," "Tuition Reimbursement," etc.) in the calculation of the regular rate for the overtime actually paid under Publix's "fluctuating workweek" calculation method ("FWW"), and (ii) that Publix's "fluctuating workweek" pay plan did not satisfy the requirements of 29 C.F.R. § 778.114. There are no state law Rule 23 class claims alleged in this action, and therefore the Court may approve this FLSA settlement without preliminary approval, a hearing, and other requirements applicable

only to Rule 23 class claim settlements.[1] The case was conditionally certified to proceed as a collective action, and approximately 1,580 out of approximately 17,000 FWW Associates filed Consents to join this lawsuit.

Publix has vigorously defended this case. It filed a Motion for Summary Judgment as to Plaintiff Amanda Ott's Exempt Status and Retail Bonus on April 23, 2013, which was denied without prejudice to being refiled after discovery was completed. It took discovery on both the Plaintiffs' and the Opt-in Plaintiffs' claims, including more than 20 depositions of Opt-in Plaintiffs. Publix denies all liability, denies Plaintiffs would be able to satisfy their burden to show that Plaintiffs' and Opt-in Plaintiffs' claims could be tried collectively, denies Plaintiffs are entitled to overtime pay as a result of their performance of overtime exempt job duties, denies that any bonus or supplemental payment amounts were required to be included in the regular rate of pay, and denies that its overtime pay plan did not meet the requirements of the fluctuating workweek calculation method. In short, this case has been hotly contested. The parties have been litigating this case since the original Complaint was filed on May 15, 2012, and the docket contains over 245 entries.

Subject to this Court's approval, the parties have entered into a Settlement Agreement ("Agreement). Because obtaining individual assent from over 1500 opt-in plaintiffs (referred to in the Agreement as Group 1) is impracticable, the Court-approved Notice of Rights issued to each FWW Associate who opted in and the Court-approved Consent forms filed by the Opt-In

---

[1] Unlike a Rule 23 class action settlement, approval of a FLSA collective action settlement in which plaintiffs have expressly opted-in to the litigation and delegated settlement authority to the named plaintiffs does not require the two-step process of preliminary approval, notice to the class, and an opportunity to object that is ordinarily required under Rule 23. *See Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 721-22 (E.D. La. 2008).

Plaintiffs in this case conferred full settlement authority on the Representative Plaintiffs to enter into this settlement on behalf of the Opt-In Plaintiffs. The Notice stated in pertinent part:

> If you join the Lawsuit, you will be bound by any judgment of the Court, whether it is favorable or unfavorable. If the Representative Plaintiff is successful in recovering a money judgment or settlement from Publix, you will also be bound by any such judgment or settlement and will share in the amount recovered by the Representative Plaintiff. If you join the Lawsuit, the Representative Plaintiffs' attorneys will represent you on a contingent fee basis. Under the fee agreement, you will not have to pay the lawyers directly - win or lose. Instead, the attorneys will be paid a portion of the amount, if any, recovered from Publix by settlement or other payment, or as otherwise awarded by the Court.

The Court-approved Consent forms gave the Representative Plaintiffs full settlement authority on behalf of the Opt-In Plaintiffs who filed signed Consents in this case:

> I hereby designate the Representative Plaintiff(s) as my agent(s) to make decisions on my behalf concerning this FLSA overtime case against Publix, including conducting this litigation, settlement negotiations, and all other matters pertaining to these claims against Publix. I understand that if I file this consent, I will be bound by the decisions made and agreements entered into by the Representative Plaintiff(s) and Class Counsel.
>
> I understand that the Representative Plaintiffs have entered into a contingency fee agreement with the law firms of Hardin & Hughes, LLP, and Fried & Bonder, LLC ("Class Counsel"), which applies to all plaintiffs who file this consent, and by filing this consent I agree to be bound by such contingency fee agreement. I understand that I may obtain a copy of the contingency fee agreement by requesting it from Class Counsel.
>
> I acknowledge that I will be bound by any judgment or any settlement reached between the Representative Plaintiff(s) and Publix. I understand that I will be entitled to share in any class recovery, but if no monetary judgment or settlement is obtained, I will receive nothing.

The settlement is predicated on re-opening the opt-in period to provide the opportunity for FWW Associates who have not opted in to the case (referred to in the Agreement as Group 2)

3

to receive notice of the settlement, opt-in, and join the settlement, if they choose to do so. Group 2 includes both those FWW Associates who are within the time period and who previously received notice of this lawsuit in July 2013, and those who began work as FWW Associates only after notice was sent and thus never have had an opportunity to join the lawsuit and otherwise would be unable to participate in this settlement.

As set forth in the attached Agreement, Publix agrees to pay a Gross Settlement Amount of $30,000,000 ("Gross Settlement Amount") as follows (the specific language of the Agreement shall be controlling over any summary herein):

> 1. After deduction for the costs of the Claims Administrator (expected to total approximately $150,000 - $300,000), the remainder of the Gross Settlement Amount will be allocated as follows: (i) 7/27ths (approximately $7,700,000 - $7,738,889) will be paid to all Named and Opt-In Plaintiffs who filed Consents to join this case and were not dismissed with prejudice at their own request prior to execution of the Settlement Agreement ("Group 1") allocated based on their pro rata amounts of FWW overtime pay received within the covered period as a percentage of all Group 1 overtime pay received within that period; (ii) 14/27ths (approximately $15,400,000 - 15,477,778) will constitute the total amount to be offered to the non-Group 1 FWW Associates who have not yet filed Consents to join this case and who were paid any FWW overtime by Publix within the preceding three year period set forth in the Agreement ("Group 2"), by the issuance of a Notice advising them of their rights to accept or decline the offer and the allocated gross settlement payment amount that they would receive[2] based on their pro rata amounts of overtime pay received within the covered period as a percentage of all Group 2 overtime pay received, accompanied by a check bearing release language on the back which expires in 120 days; and (iii) 6/27ths (approximately $6,633,333 - 6,599,999), if approved by the Court, will be paid for fees and costs to Plaintiffs' Counsel;
>
> 2. Named Plaintiffs and all Group 1 members will be deemed to have released their claims as set forth in the Agreement pursuant to the settlement authority granted to Named Plaintiffs by the Opt-

---

[2] As set forth in the Settlement Agreement, there is a separate procedure for a small subset of Group 2 members whose payment amounts would be subject to a lawful garnishment or withholding order such as child support, tax liens, garnishment judgments, etc. ("Group 2B").

In Plaintiffs in their Court-approved Consents filed with the Court. No amount of the 7/27ths paid to Group 1 will revert to Publix in any event;

3. Only those Group 2 members who affirmatively accept their offered amount by endorsing, negotiating, or otherwise depositing/cashing the offered settlement payment[3] will be deemed to have released their claims as set forth in the Agreement. Group 2 members who do not affirmatively accept their offered settlement payment amounts will not release any claims, and their unaccepted amounts from the 14/27th allocation to Group 2 will remain in Publix's accounts.

4. Each individual settlement payment issued to each settlement class member will be separated into two equal amounts: 50% shall be allocated to the claims asserted in the lawsuit for unpaid overtime wages, and 50% shall be allocated to the claims asserted in the lawsuit for liquidated damages. The portion allocated to claims for unpaid overtime and other wage-related damages will be subject to all required employee- and employer-paid payroll taxes and deductions (*e.g.,* federal income taxes, state income taxes, FICA taxes). The portion allocated to liquidated damages and other relief shall be characterized as non-wage income to the recipient.

The parties, having reached agreement to settle this FLSA collective action, respectfully request that the Court: (i) enter an Order approving and incorporating the terms of the Settlement Agreement, reopening the opt-in period for the limited purpose of allowing those Group 2 members who accept their settlement offers to have their acceptance filed as a consent to opt-in to this case under Section 216(b), and reserving jurisdiction to govern the administration of the settlement before entry of dismissal; (ii) approve the service payments to participating plaintiffs;[4] (iii) approve payment of Claims Administrator costs from the Gross Settlement Amount, and (iv)

---

[3] Or, for Group 2B members with garnishment/lien/withholding issues, by signing and returning a form agreeing to the payment and release of their claims.

[4] Plaintiffs propose, subject to Court approval, service payments in the amount of $2,500 per year of service as a Named Plaintiff ($7,500 to Amanda Ott, $2,500 to Bruce Bogach, and $2,500 to April White), and in addition (a) $200 to members of Group 1, excluding Ott, Bogach, and White, who participated in a deposition in the lawsuit; and (b) $100 to members of Group 1, excluding Ott, Bogach, and White, who previously answered written discovery in the lawsuit, which discovery responses were tendered to Defendant. If approved, these amounts will be deducted first from the Group 1 7/27th allocation amount before distribution based on the pro rata payment formula.

5

approve an award of attorneys' fees to Plaintiffs' Counsel in the amount of 6/27ths of the Gross Settlement Amount remaining after deduction of Claims Administrator costs.

## II.     Legal Argument

### A.     Legal Standards for Settlement Approval

Although the Sixth Circuit has not yet opined on this issue, other circuits have held that Court approval is required to settle FLSA claims including FLSA collective actions such as this case. *See, e.g., Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). If a settlement in an employee FLSA suit reflects a "reasonable compromise over issues," such as FLSA coverage or computation of back wages that are "actually in dispute," the court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Id.* at 1354.

"The standard for approval of an FLSA settlement is significantly lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as a Rule 23 settlement." *Flores v. One Hanover, LLC*, 2014 U.S. Dist. LEXIS 78269 (S.D.N.Y. June 9, 2014). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement," and "approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Id.* (citing *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353-54, 1353 n.8 (11th Cir. 1982)).

This settlement was the result of over two and a half years of contested litigation and arm's length negotiation between the parties. The parties were represented by counsel experienced in wage and hour law, conducted years of discovery (including over 25 depositions and Publix's production of over 60,000 pages of documents), engaged in a vigorous motions practice, exchanged damages calculation methods during mediation, prepared for summary

judgment motions and for trial, and participated in a full-day mediation on September 11, 2014 with nationally recognized class/collective action mediator Michael Loeb, followed by months of subsequent negotiations with the aid of the mediator and/or between counsel in an effort to reach the settlement. Therefore, final approval of the FLSA settlement is warranted.

### B. The Settlement is Fair, Reasonable, and Adequate.

Although not required for approval of FLSA collective action settlements, this Court can look to authorities regarding the approval of Rule 23 class action settlements for guidance in this inquiry. The Sixth Circuit has identified seven factors that guide a court when assessing whether a proposed Rule 23 settlement is fair, reasonable, and adequate:

> (1) the risk of fraud or collusion [i.e. whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining]; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*Moulton v. United States Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009); *UAW*, 497 F.3d at 631 (*citing Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992) and *Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir. 1983)). In considering the seven factors, the district court may choose to "consider only factors that are relevant to the settlement and may weigh particular factors according to the demands of the case." *IUE-CWA*, 238 F.R.D. at 594-595.

#### 1. The Settlement is the Product of Arm's Length Negotiations (Factor 1)

Settlement negotiations in this matter have been lengthy, principled, and were conducted at arm's length. Settlement discussions between the parties began in approximately May, 2014, followed by an eventual full-day mediation on September 11, 2014, and continued thereafter with numerous counter-offers and protracted settlement discussions occurring over the course of several months with the aid of the mediator and/or between counsel.

7

The parties' negotiations were principled, with each side basing their offers and counter-offers on Defendant's own time and pay records produced in litigation, the parties' respective assessments of this Court's decisions and rulings by the Sixth Circuit and its district courts on numerous issues to date, the expected Plaintiff and management testimony at trial regarding the facts at issue, and the parties' individual assessment of litigation risks.

Accordingly, the principled, arm's-length negotiations support final approval of the settlement agreement.

### 2. While Both Parties Believe Their Position is Strong, Continued Litigation Through Trial and Appeal Would be Complex, Costly, and Long (Factors 2 and 4)

While Plaintiffs believe their legal position is strong, "[w]hatever the relative merits of the parties' legal positions, there is no risk-free, expense-free litigation." *Sheick v. Auto. Component Carrier LLC*, 2010 U.S. Dist. LEXIS 110411 (E.D. Mich. Oct. 18, 2010); *see also In re Cincinnati Policing*, 209 F.R.D. 395, 400 (S.D. Ohio 2002) ("The trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court.... The prospect of such a massive undertaking clearly counsels in favor of settlement.") (internal quotation marks and citations omitted). Thus, although the Plaintiffs believe they would have ultimately succeeded through summary judgment on many of the merits issues involved in the action (a contention hotly disputed by Publix), there is no doubt that the trial on behalf of approximately 1580 Opt-In Plaintiffs who worked under twelve different job titles would be long, arduous and complex.

For its part, Publix believes it would have succeeded in decertifying Plaintiffs' and Opt-in Plaintiffs' claims in light of numerous individualized issues and defenses related to those claims. As Publix argued in its Motion for Summary Judgment as to Plaintiff Amanda Ott's Exempt

Status and Retail Bonus, a large number of Opt-in Plaintiffs performed overtime exempt job duties (a position disputed by Plaintiffs), which would have to be tried on an individual basis. Moreover, even to the extent that any Plaintiffs or Opt-In Plaintiffs were entitled to overtime pay, Publix asserts that it paid those individuals consistent with the Supreme Court's holding in *Overnight Motor Transporation Co. v. Missel*, 316 U.S. 572, 579 (1942), and subsequent decisions, setting forth the standards for use of the FWW pay plan. And Publix continues to assert that the FLSA excludes from the regular rate the bonuses and other supplemental payments made to Plaintiffs and Opt-in Plaintiffs, an issue that continues to be litigated in another case -- *April White, et al. v. Publix Super Markets, Inc.*, No. 3:14-cv-001189 (M.D. Tenn.) – with a different class of employees.

Even if Plaintiffs were to succeed on all of their claims at trial, it is likely that Defendant would appeal the decisions to the Sixth Circuit. While the parties disagree on the merits of their opponents' respective positions, they agree that the Sixth Circuit has not yet considered several significant issues in this case such as whether Publix's FWW pay plan failed to satisfy the "fixed weekly salary" or other requirements of 29 C.F.R. § 778.114, and thus the losing party would face substantial risk on appeal.

At the time of settlement, the parties were preparing to file final dispositive motions, and Publix was preparing to file its motion to decertify the collective action. If Publix were successful in decertifying the case, the plaintiffs dismissed by decertification would have been forced to litigate their FLSA claims in separate actions, a result that would be time-consuming and expensive. This settlement, on the other hand, makes monetary relief available to the participating class members in a prompt and efficient manner.
9

Case 3:12-cv-00486   Document 247   Filed 02/03/15   Page 9 of 20 PageID #: 7152

Finally, and significantly, Publix has made major changes to its pay policies since this lawsuit began in 2012. First, Publix no longer pays overtime based on the FWW calculation method. Previously, all Department Managers and Assistant Department Managers were expected to work a minimum average of 50 hours per week while paid by a FWW overtime calculation method. Effective December 27, 2014, all Assistant Department Managers are now paid by the hour (at a rate that ensures they receive the same pay for working 45 hours that they previously received for working 50 hours), with a target of 45 hours per week, and receive overtime pay at the rate of one-and-a-half times their regular rate. All Department Managers are now paid as weekly salaried exempt with a target of 50 hours per week, but at the same pay they received before for working 52 hours per week. Moreover, Publix no longer requires associates to work at least 50% of their scheduled shifts before, on (if scheduled), and after a Publix holiday in order to receive Holiday Pay. Thus, regardless of the strength of the parties' positions, many of the pay policies at issue in this litigation – including the entire FWW pay practice – are no longer in effect.

In light of the above considerations, these factors weigh in favor of final approval.

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Factor 3)

The parties engaged in extensive discovery, exchanging and analyzing over 60,000 pages of documents and massive amounts of electronic payroll data from Publix alone. Publix deposed approximately 25 plaintiffs, and the Plaintiffs took multiple Rule 30(b)(6) depositions. Thus, discovery has advanced far enough to allow the parties to resolve this dispute responsibly, and this factor supports final approval.

### 4. Counsel and the Representative Plaintiffs Believe Settlement is In the Best Interest of the Opt-In Plaintiffs They Represent (Factor 5)

The proposed Agreement provides that, subject to fairness review and approval by this Court, the Plaintiffs and Opt-in Plaintiffs will receive the individual settlement payments guaranteed to Group 1 members in the Agreement and release their claims in this case, and Publix will offer the individual settlement payments from the Group 2 allocated amounts to Group 2 members, each of whom is free to then decide whether to accept the offered individual settlement payment and release their claims, or decline to accept the offered individual settlement payment and not release any claims.  Counsel for the parties have fully analyzed and evaluated the merits of the Plaintiffs' claims and contentions, Publix's defenses, and this settlement as it impacts Plaintiffs, the Opt-in Plaintiffs, and the recipients of the Group 2 offers.  After taking into account the foregoing, along with the substantial risks of litigation, counsel are satisfied that the terms of the proposed Agreement guaranteeing the allocated payment amount to Group 1 are fair, reasonable, adequate and equitable, and are in the best interest of all parties in light of all known facts and circumstances, including the risk of delay, defenses asserted by Publix, and numerous potential decertification and appellate issues.

Group 1, the approximately 1580 plaintiffs who joined this litigation, will share in a total allocated payment of approximately $7.7 million (for an approximate average of $4,886 per Group 1 member).  That amount is net of fees and costs, which means that Publix is paying more than $11 million in total for Group 1's back pay, liquidated damages, attorney's fees, and costs.  By Plaintiffs' calculations from the payroll data provided in discovery, the Group 1 class members had already been paid approximately $10 million in overtime pay for those same hours worked at the FWW calculation using the default FLSA statute of limitations period.

The parties do not agree on the proper damages calculation that this Court would apply if Plaintiffs prevailed on their claims in this case.  Publix contends that even if the Court found that

it failed to satisfy the Department of Labor's interpretive bulletin at 29 C.F.R. § 778.114, there are no damages for non-compliance with § 778.114 when an employer paid the half-time overtime because the Supreme Court in *Missel* approved a half-time overtime calculation method. In the event that argument fails, Publix contends that damages should be awarded by dividing the weekly salary by all hours worked rather than by the average hours worked (approximately 52 per week), or the minimum expected hours worked (50 hours per week), for FWW Associates prior the December 27, 2014 change in their pay plans. Publix, for example, noted that in *Cowan v. Treetop Enter., Inc.*, 163 F. Supp. 2d 930 (M.D. Tenn. 2001), another judge in this district awarded FLSA damages (in that case, based on claims of misclassification as exempt) by dividing the weekly salary by the average hours it was meant to compensate (in that case, an average of 53 hours per week) to determine the applicable regular rate, thereby determining that plaintiffs had been paid straight time for all hours up to 53 in a week, and then awarded overtime damages at only one-half that regular rate for hours 40-53, and at time and a half for all hours over 53.

Plaintiffs argued for a more favorable damages calculation method, one that assumes (i) that Plaintiffs would prevail on all of their regular rate arguments, and (ii) that damages for the invalid FWW pay plan would then be awarded at the most favorable calculation method of dividing the weekly salary and the previously excluded additional compensation items (i.e., total weekly pay) by only 40 hours per week.

The total allocated payment to Group 1 – <u>net of any fees and costs</u> -- of approximately $7.7 million far exceeds the zero damages amount that would result from a finding that Publix's pay plan violated § 778.114 but was nonetheless permissible under *Missel*, as well as the damages amounts for the default FLSA recovery period that would result from crediting Publix

as having already paid straight time for the average hours worked (approximately 52 per week) or for the expected hours worked (50 per week), and/or the damages calculation method utilized in *Cowan*. In summary, the settlement payment amount to Group 1 is more than the overtime back pay that would be awarded for the default FLSA period if the Court utilized the least favorable to Publix of the various damages calculation methods that Publix contends to have potential application if Plaintiffs prevailed in this case, and is less than would be awarded if the Court utilized Plaintiffs' proposed damages calculation method. It is therefore a reasonable amount to be paid in settlement to Group 1 in exchange for their release of claims as set forth in the Agreement.

Counsel are also satisfied that it is reasonable to make an offer to Group 2 members (some of whom initially failed to join this litigation, and others of whom became FWW Associates after notice of the case was sent) of the amounts allocated to Group 2 in the Agreement. Group 2 members may decide whether to accept the offered amounts and release their claims, or decline the offered amounts and not release any claims. The approximately $15.4 million amount to be offered to Group 2 members will result in average individual offer amounts of approximately $1,000 per Group 2 member. In order to settle the Group 1 Plaintiffs' claims in this case, while at the same time rolling out changes to the pay plans for the positions at issue, Publix sought a settlement procedure that involved a combined payment to Group 1 members, and allowed them to make an offer to Group 2 members to participate in a Court-approved settlement and thereby release their claims if accepted. The parties ultimately reached this agreement that allows Publix to make that offer to Group 2 members, and this agreement is predicated upon Publix being able to make an offer to Group 2 members and those Group 2

13

members having the ability to opt-in to the case for purposes of joining the settlement if they choose to accept their individual settlement offer.

### 5. The Overwhelmingly Positive Reaction of Opt-In Plaintiffs Weighs in Favor of Final Approval (Factor 6)

As set forth above, the response to the settlement from those Opt-In Plaintiffs who have spoken with Plaintiffs' counsel to date regarding the settlement has been overwhelmingly positive. No Opt-In Plaintiffs have communicated their objection to the Group 1 settlement payment amount. Pursuant to the settlement administration procedures set forth in the Agreement, notice has not yet been distributed to all Group 1 Opt-In Plaintiffs, or to any of the Group 2 members.[5]

### 6. The Public Interest Weighs in Favor of Final Approval (Factor 7)

The final resolution of this litigation will, among other things, (i) provide back pay and liquidated damages to the participating FLSA class members; (ii) ensure certainty of recovery for the Group 1 members and those Group 2 members who accept the settlement amounts offered, without any further delay, and (iii) obviate the need for years of litigation by Plaintiffs, all of which are consistent with the public interest. Further, as stated above, Publix has changed pay practices at issue in this case to the benefit of all its current and future Department Managers and Assistant Department Managers. Thus, while both sides agree that this litigation resulted in benefits to participating plaintiffs for hours previously worked, Plaintiffs also contend that the litigation benefited *future* employees working for Defendant as Department Managers or Assistant Department Managers. Accordingly, this Agreement simultaneously benefits the parties and serves the public interest by ensuring compensation to the participating members for alleged previously unpaid (or improperly compensated) work, and resolving this federal court

---

[5] The parties intend to supplement this joint motion regarding proposed notices by February 4, 2015.

case with the maximum possible expediency and efficiency. *See Cardizem*, 218 F.R.D. at 520 ("There is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources").

### C. The Service Awards Sought Are Appropriate in this Case

Plaintiffs also request that the Court approve the following service awards to participating plaintiffs for their work and willingness to represent the class:

> [S]ervice payments in the amount of $7,500 to [Representative Plaintiff] Amanda Ott, $2,500 to [Representative Plaintiff] Bruce Bogach, and $2,500 to [Representative Plaintiff] April White. . . [and] service payments in the amount of (a) $200 to members of Group 1, excluding Ott, Bogach, and White, who participated in a deposition in the Lawsuit; and (b) $100 to members of Group 1, excluding Ott, Bogach, and White, who previously answered written discovery in the Lawsuit, which was tendered to Defendant.

The proposed service awards are intended to compensate the Representative Plaintiffs, at $2,500 per year of representative service in this litigation, and those plaintiffs who were required to participate in discovery (depositions, or responding to written discovery) on behalf of the opt-in class, for their willingness to serve and represent the opt-in class, the services they rendered, the risks they bore, and opportunities sacrificed to ensure a favorable settlement for the class. The proposed service awards are consistent with payments to named and participating plaintiffs that have been approved by this Court. *See, e.g., Pendergrass v. City Gear, LLC*, No. 3:12-cv-01287 [Dkt. 142] (M.D. Tenn. Mar. 14, 2014) (Campbell, J.) (approving settlement awarding service payments in FLSA/Rule 23 hybrid case of $20,000 to one named plaintiff, $10,000 to other named plaintiffs, and $3,000 to opt-in declarants).

As one court explained, "because a named plaintiff is an essential ingredient of any class action, an incentive or service award can be appropriate to encourage or induce an individual to participate in the suit" and to other participating plaintiffs because class counsel "may need the support and assistance of other class members who are not named plaintiffs" during the course of the litigation. *Scovil v. FedEx Ground Package Sys.*, 2014 U.S. Dist. LEXIS 33361 (D. Me. Mar. 14, 2014) (awarding service awards between $10,000 and $20,000 to named and participating plaintiffs). In determining whether an award is warranted, courts consider "the steps these individuals have taken to protect the interests of the class, the degree to which the class has benefited from those actions, the amount of time and effort they have expended in pursuing the litigation, and any negative effects that they have risked." *Id.*

Here, the Representative Plaintiffs performed an integral service to the opt-in class by contacting and meeting with Plaintiffs' Counsel prior to the filing of their respective claims, providing declarations and deposition testimony, responding to written discovery requests, and contributing significant time and effort into the prosecution of the litigation over a two and a half year period. In addition to the Representative Plaintiffs, the Opt-In Plaintiffs who were required to participate in depositions and discovery on behalf of the opt-in class should receive service payments in recognition of their service to the class.

These proposed service awards, which range from $200 to Opt-In Plaintiffs who participated in depositions or written discovery to $2,500 per year of service as a Representative Plaintiff, are within the range awarded by district courts in this Circuit, and in wage and hour actions in other jurisdictions. *See e.g.*, *Swigart v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 94450 (S.D. Ohio July 11, 2014) (approving "modest class representative award" requests of $10,000 to each of the class representatives in FLSA/Rule 23 Hybrid); *Fosbinder-Bittorf v. SSM*

*Health Care of Wisconsin, Inc*., 2013 U.S. Dist. LEXIS 152087 (W.D. Wis. Oct. 23, 2013) (approving service payments between $5,000 and $15,000 to named and participating plaintiffs in FLSA/Rule 23 Hybrid); *Henry v. Little Mint, Inc.*, 2014 U.S. Dist. LEXIS 72574 (S.D.N.Y. May 23, 2014) (approving $10,000 service awards to named plaintiffs in FLSA/Rule 23 Hybrid).

### E. Plaintiffs' Counsel Are Entitled To The Fees And Costs Amount In The Agreement.

Plaintiffs request, and Publix does not oppose, the Court's approval of the fees and costs amount specifically allocated in the Agreement. The Court adjudicating an FLSA action "shall, in addition to any judgment awarded ..., allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216. The award is mandatory, the determination as to the amount of the award is discretionary. *See United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 501 (6th Cir. 1984).

In light of the extraordinary results achieved,[6] Plaintiffs request that Plaintiffs' Counsel be awarded their attorneys' fees and costs in the amount of 6/27ths of the Gross Settlement Amount remaining after deduction of Claims Administrator costs. Although this amount reflects approximately only 22% of the total Settlement Amount (including both guaranteed amounts to Group 1 and offered amounts to Group 2), it is more accurately analyzed as approximately one-third (33 1/3 %) of the total portion of the total Settlement Amount that would be required to net Group 1 their guaranteed 7/27th allocation amount after payment of 33 1/3% fees and costs, and approximately fifteen percent (15%) of the total portion of the Settlement Amount remaining

---

[6] *See, e.g., Dillworth v. Case Farms Processing, Inc.*, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010)(awarding counsel's fees using the common fund method at one-third (33 1/3%) of the total settlement fund in FLSA collective action, holding results were "exceptional" where "[t]he Individual Payments to participants represent approximately *one-third* of claimed unpaid wages, *before* deduction of attorneys' fees and expenses[, which] is well above the 7 % to 11 % average result achieved for class members.") (emphasis added).

17

Case 3:12-cv-00486   Document 247   Filed 02/03/15   Page 17 of 20 PageID #: 7160

after those Group 1 amounts that would be required to net Group 2 the offered 14/27th allocation amount after payment of 15% fees and costs (or, analyzed another way, close to one-third (34.9%) of the total remaining portion that Defendant would have to pay out on Group 2 offers if only one-half (50%) of Group 2 accepted resulting in only one-half (50%) of the allocated 14/27th Group 2 amount being paid, in order to net the 50% who accepted Group 2 offers their 50% of the allocated 14/27th allocation amount after payment of close to one-third fees and costs). Although Plaintiffs' engagement agreement with Named Plaintiffs, binding on all Opt-In Plaintiffs by the express terms of their signed Consents as cited above, allows for a fee of 40% of the total recovery amount and additional payment for advanced costs, Plaintiffs have agreed due to exceptional circumstances for the limited purposes of this case and this settlement only to accept a fee of 6/27th of the total Settlement Amount, and to pay all advanced costs out of that fee award.

Plaintiffs contend, and Defendant does not oppose, that this amount of attorneys' fees and costs to be paid as a percentage of the settlement fund, incurred by attorneys from three law firms over two and a half years of hard-fought litigation, is entirely reasonable, and request that it be awarded in full.[7]

### F. The Claims Administrator's Costs Should Be Approved

---

[7] Plaintiffs request an award of fees based on a percentage of the settlement amounts being paid. The percentage-of-the-fund method, also known as the common fund doctrine, allows attorney's fees to be based on a percentage of the total recovery to the plaintiff class. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The Sixth Circuit approves use of the common fund method. *Rawlings v. Prudential–Bache Properties, Inc.*, 9 F.3d 513, 516–17 (6th Cir. 1993). The percentage of the total Settlement Amount requested as attorney's fees and costs to be awarded to Plaintiffs' Counsel is less than the normal 33 1/3% of total maximum possible fund amount approved by courts in similar settlements. *See, e.g., Pendergrass v. City Gear, LLC*, No. 3:12-cv-01287 [Dkt. 142] (M.D. Tenn. Mar. 14, 2014) (Campbell, J.) (awarding attorneys' fees in FLSA and Rule 23 hybrid action at one-third (33 1/3%) of the total possible Maximum Payment settlement amount); *Dillworth*, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010)(awarding counsel's fees using the common fund method at one-third (33 1/3%) of the total settlement fund). Although this Court has previously approved common fund awards at a higher percentage of total possible settlement amount in *Pendergrass* (at 33 1/3% of the total Maximum Participation amount in a claims-made reversionary FLSA/Rule 23 hybrid case), if the Court requires additional briefing or information on the attorney's fees and costs requested herein, Plaintiffs request the opportunity to provide any such briefing or information requested in support of this requested award.

The Agreement contemplates that Dahl Administration, subject to approval and agreement to an acceptable cap on claims administration fees charged to the Settlement Amount, will be retained and appointed by the Court's Order approving settlement to administer this settlement, including issuance of notices and payment, validation of amounts, and all other administrator duties set forth in detail in Section 7 of the Agreement. Accordingly, the Claims Administrator is entitled to payment for their services pursuant to the terms of the Agreement from the total Settlement Amount.

## V. Conclusion

For the reasons set forth above, the parties respectfully request that the Court (i) enter an Order approving and incorporating the terms of the Settlement Agreement, reopening the opt-in period for the limited purpose of allowing those Group 2 members who accept their settlement offers to have their acceptance filed as a consent to opt-in to this case under Section 216(b), and reserving jurisdiction to govern the administration of the settlement before entry of dismissal after the conclusion of the 140 day reporting period; (ii) approve the service payments to participating plaintiffs; (iii) approve payment of Claims Administrator costs by deduction from the Gross Settlement Amount, and (iv) approve an award of attorneys' fees to Plaintiffs' Counsel in the amount of 6/27ths of the total Settlement Amount remaining after deduction of Claims Administrator costs.

A proposed Order is attached.

Respectfully submitted this 3rd day of February, 2015.

| | |
|---|---|
| */s/ C. Andrew Head* | */s/ Michael J. Gray* |
| C. Andrew Head (*pro hac vice*) | Michael J. Gray (*pro hac vice*) |
| Georgia Bar No. 341472 | Brent D. Knight (*pro hac vice*) |
| **FRIED & BONDER, LLC** | Illinois Bar No. 06210880 |
| White Provision, Suite 305 | Attorney for Defendant |

1170 Howell Mill Road, N.W.
Atlanta, Georgia 30318
Telephone: (404) 995-8808
Facsimile: (404) 995-8899
Email: ahead@friedbonder.com

David Hughes (*pro hac vice*)
Alabama Bar No. 3923-U82D
**HARDIN & HUGHES, LLP**
2121 14th Street
Tuscaloosa, Alabama 35401
Telephone: (205) 344-6690
Facsimile: (205) 344-6188
Email: dhughes@hardinhughes.com

Charles Yezbak, III
Tennessee Bar No. 018965
**YEZBAK LAW OFFICES**
2002 Richard Jones Road, Suite B-200
Nashville, Tennessee 37215
Telephone: (615) 250-2000
Facsimile: (615) 240-2020
Email: yezbak@yezbaklaw.com

Attorneys for Plaintiffs

**JONES DAY**
77 West Wacker
Chicago, Illinois 60601
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
Email: mjgray@jonesday.com
Email: bdknight@jonesday.com

Craig S. Friedman (*pro hac vice*)
Georgia Bar No. 335145
Attorney for Defendant
**JONES DAY**
1420 Peachtree Street, N.E., Suite 800
Atlanta, Georgia 30309
Telephone: (404) 581-3939
Facsimile: (404) 581-8330
Email: csfriedman@jonesday.com

Wendy V. Miller
Tennessee Bar No. 023500
Attorney for Defendant
**OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.**
401 Commerce Street, Suite 1200
Nashville, Tennessee 37219
Telephone: (615) 254-1900
Facsimile: (615) 254-1908
Email: wendy.miller@ogletreedeakins.com

Edmund J. McKenna (*pro hac vice*)
Florida Bar No. 0845922
Attorney for Defendant
**OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.**
100 North Tampa Street, Suite 3600
Tampa, Florida 33602
Telephone: (813) 289-1247
Facsimile: (813) 289-6530
Email:
edmund.mckenna@ogletreedeakins.com