## SETTLEMENT AGREEMENT

## AND

## LIMITED RELEASE OF CLAIMS

**AMANDA OTT, ET AL.**

**AND**

**PUBLIX SUPER MARKETS, INC.**

## SETTLEMENT AGREEMENT AND LIMITED RELEASE OF CLAIMS

This Agreement (the "Settlement Agreement"), is entered into by and between Publix Super Markets, Inc. ("Defendant" or "Publix"), and Amanda Ott, Bruce Bogach, and April White (the "Named Plaintiffs"), for themselves and on behalf of the current opt-in plaintiffs (together with the Named Plaintiffs, "Current Plaintiffs" or "Group 1" as defined below) for their weeks worked within the relevant period as a Department Manager or Assistant Department Manager at Publix that were compensated for hours worked over 40 in a workweek using a "fluctuating workweek" method for calculating overtime, and who worked over 40 hours in such a position in any workweek during the time periods in this Agreement (a "FWW Associate"), resulting in an offer of settlement as set forth below to a class of all other similarly situated FWW Associates who are not Current Plaintiffs ("Group 2" as defined below), in the case of *Amanda L. Ott, et al., individually, and on behalf of all others similarly situated v. Publix Super Markets, Inc.,* Case No. 3:12-cv-00486, filed in the United States District Court for the Middle District of Tennessee (the "Lawsuit").

## RECITALS

WHEREAS, Amanda Ott filed this collective action lawsuit pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA") against Publix on May 15, 2012.

WHEREAS, Defendant filed an Answer denying the material allegations of the initial Complaint on June 13, 2012, and a Motion to Dismiss Plaintiff's Time-Barred Clams and Strike Certain Class Allegations.

WHEREAS, Amanda Ott subsequently filed two amended Complaints, the First Amended Complaint having been filed on July 5, 2012 and the Second Amended Complaint having been filed on March 17, 2014.

WHEREAS, the Second Amended Complaint joined as parties and added the claims of additional Named Plaintiffs Bruce Bogach and April White.

WHEREAS, Defendant filed Answers to the First Amended Complaint and Second Amended Complaint on July 19, 2012 and April 3, 2014, respectively, again denying the material allegations.

WHEREAS, on March 4, 2013, Amanda Ott filed a Motion for Conditional Certification and Issuance of Notice.

WHEREAS, on April 23, 2013, Publix filed a Motion for Summary Judgment as to Plaintiff Amanda Ott's Exempt Status and Retail Bonus.

WHEREAS, on May 3, 2013, the District Court granted Amanda Ott's conditional certification motion and pursuant to 29 U.S.C. § 216(b) conditionally certified a class consisting of "all current and former FWW Associates who work or worked in a Publix grocery store and who worked over forty hours in one or more weeks during the relevant period."

WHEREAS, on June 4, 2013, the District Court denied Publix's motion for summary judgment without prejudice to being re-filed once discovery related to the issues raised in the motion was complete.

WHEREAS, notice of the Lawsuit was sent via First Class mail to the conditionally certified class in about July 2013 and approximately 1583 individuals in addition to the Named Plaintiffs have filed consent forms opting into the Lawsuit.

WHEREAS, the parties engaged in significant discovery during the prosecution of the Lawsuit, including the exchange of Rule 26 disclosures, service of multiple sets of formal document requests and interrogatories, and Publix's production of over 60,000 pages of

documents. Depositions were also conducted of Defendants' corporate representatives and of the Named Plaintiffs and over 20 other individuals who filed consents to join the Lawsuit.

WHEREAS, the parties mediated the Lawsuit on September 11, 2014, in Atlanta, Georgia with a nationally-recognized and well-respected mediator of FLSA collective actions and, after a full-day mediation followed by over two months of continued negotiations through the mediator and/or between counsel, arrived at an agreement to settle the claims in the Lawsuit as set forth herein.

WHEREAS, Defendant denies all allegations and all liability and damages of any kind to anyone regarding these alleged facts or causes of action asserted in the Lawsuit, and denies the Lawsuit could be litigated on a collective action basis, but nonetheless, without admitting or conceding any liability or damages whatsoever or the propriety of collective action status for trial, has agreed to settle on the terms and conditions in this Settlement Agreement to avoid the burden, expense and uncertainty of continuing the Lawsuit.

WHEREAS, the parties recognize that the outcome in the Lawsuit is uncertain and that achieving a final result through the litigation process would require substantial additional risk, discovery, time, and expense.

WHEREAS, Named Plaintiffs have investigated and evaluated the facts and law relating to the claims asserted in the Lawsuit to determine how best to serve the interests of the Current Plaintiffs and believe, in view of the costs, risks, and delay of continued litigation balanced against the benefits of settlement, that the settlement as provided in this Settlement Agreement is in the best interests of the Current Plaintiffs and that the settlement provided in this Settlement Agreement represents a fair, reasonable, and adequate resolution of the Lawsuit.

WHEREAS, the parties have agreed to settle this case as to all Named Plaintiffs and Current Plaintiffs, and have agreed that Publix will make an offer of settlement to the members of Group 2 as defined below, which the Group 2 members may accept or decline as set forth below.

NOW THEREFORE, the parties, intending to be legally bound and in consideration of the mutual covenants and other good and valuable consideration set forth below, do hereby agree as follows:

## AGREEMENT

1. <u>Settlement Amount</u>. Defendant agrees to a gross settlement amount of Thirty Million Dollars ($30,000,000.00) ("Settlement Amount") to be paid and allocated as set forth below, which is inclusive of attorneys' fees, costs, expenses, claims administration fees, and service awards, but does not include Defendant's share of payroll taxes or any contributions to any Employee Stock Ownership Plans, such that Defendant's settlement liability for claims released under the procedures in this Agreement, other than Defendant's share of payroll taxes, any contributions to an Employee Stock Ownership Plan, or Defendant's payment of mediation costs set forth herein, shall not exceed $30,000,000.00 under any circumstances. Only the Named Plaintiffs and Current Plaintiffs, and only those Group 2 members who satisfy the requirements for participating in the settlement specified in Paragraph 7 and accept the settlement offer (collectively, the "Participating Plaintiffs") may participate in the settlement.

2. <u>FLSA Settlement Classes</u>. There will be two groups of eligible Participating Plaintiffs: (1) all individuals who to date have opted into the Litigation by filing a signed Consent, whose claims the Parties had not agreed to dismiss with prejudice prior to reaching this

settlement agreement ("Group 1"), and (2) all other Department Managers or Assistant Department Managers who worked over 40 hours in such a position in any work week between the date three years before the date this Agreement is approved and December 31, 2014, in which they were compensated for their overtime hours in such a position using a "fluctuating workweek" calculation method ("Group 2").

3.    <u>Allocation of Settlement Amount</u>. The administrative costs of settlement (as specified in Paragraph 6) will be deducted and paid to the Settlement Administrator first from the Settlement Amount within twenty (20) days of settlement approval.  Court-approved attorneys' fees, costs, and expenses will be deducted and paid to Plaintiffs' counsel of record in the Lawsuit ("Plaintiffs' Counsel") second from the Settlement Amount within twenty (20) days of settlement approval.  One-third of the remaining Settlement Amount, after deduction of administrative costs and payment of attorneys' fees, costs, and expenses, will be allocated to Group 1.  Two-thirds of the Settlement Amount remaining after deduction of administrative costs, and payment of attorneys' fees, costs, and expenses will be available to Group 2.   As a result of the above, the approximate allocation of the Settlement Amount is: (a) 6/27ths of the Settlement Amount (approximately $6.6 million) as attorneys' fees, costs, and expenses to Plaintiffs' Counsel, subject to Court approval; (b) 7/27ths of the Settlement Amount (approximately $7.7 million) to Group 1; and (c) 14/27ths of the Settlement Amount (approximately $15.5 million) to Group 2.   Any Court-approved service payments to Group 1 members pursuant to Paragraph 9, will be deducted from the Group 1 allocation prior to the determination of pro rata individual settlement payments by the calculations below, and in addition, the amount of $200 per Group 1 member will be deducted from the Group 1

allocation prior to the determination of pro rata individual settlement payments and allocated to each Group 1 member so that each Group 1 member receives at least $200 in exchange for their release in this settlement. Payment of Court-approved service payments and the $200 minimum payments referenced in this paragraph shall not cause the total gross amount paid to Group 1 to exceed the Group 1 allocated amount as defined in the preceding sentences (i.e., one-third of the remaining Settlement Amount, after deduction of administrative costs and payment of attorneys' fees, costs, and expenses). The remaining pro rata settlement payments to individual Participating Plaintiffs in Groups 1 and 2 shall then be determined as follows:

(a)     Calculate an "Individual Numerator," which equals the total overtime pay each Participating Plaintiff received in a FWW Associate position during the relevant time period for their Group, which time periods are as follows: (i) the relevant time period for each Group 1 member is the period beginning three years prior to the date that such member filed their Consent to join the Lawsuit through the Release Effective Date ("Group 1 relevant time period"); and (ii) the relevant time period for each Group 2 member is the period beginning three years prior to the Court's settlement approval order through the Release Effective Date ("Group 2 relevant time period") (collectively the "relevant time periods").

(b)     Calculate each Group's "Total Denominator," which equals the Individual Numerator of each individual within the Participating Plaintiff's Group, added together.

(c)     Calculate each individual's "Share Percentage," which equals the Individual Numerator divided by the Total Denominator for the individual's Group.

(d)     Multiply the Share Percentage by the settlement amount allocated to Group 1 (after deduction of any Court-approved service payments and the $200 per Group 1 member minimum payment amount) or Group 2, as appropriate, to determine the individual's pro rata settlement amount ("Pro Rata Settlement Amount").

(e)     Each individual's Pro Rata Settlement amount is then (for Group 1 members only) added to their individual amounts, if any, of any Court-approved service payment amount, and (for Group 1 members only) their individual $200 per-person minimum payment amount, to determine their total individual settlement payment amount ("individual settlement payments").

4.     <u>Motion for Court Approval and Leave to Send Notice to Group 2</u>.  The parties agree to jointly file a Motion for Approval of Settlement with the Court, and a proposed Order Approving Settlement.  At the same time, the Parties will jointly file a Motion for Leave to Send Notice to, and Re-open the Opt-in Period for, Group 2.  There will be a Notice of Settlement for Group 1, in the form approved by the Court, issued by First Class Mail and email to Group 1.  There will be two forms of notice for Group 2: (1) subject to Court-approval, a Notice of Settlement Offer to Group 2 members for whom <u>no</u> wage payments, other than applicable employment taxes, are required to be withheld by law or order of court, arbitrator, or administrative body, if the offer is accepted ("Group 2A"); and (2) subject to Court-approval, a Notice of Settlement Offer and an Opt-in and Release Form to Group 2 members for whom wage payments, in addition to applicable employment taxes, <u>are</u> required to be withheld by law or order of court, arbitrator, or administrative body, including but not limited to orders of garnishment, if the offer is accepted ("Group 2B").  The parties will cooperate and take all necessary steps to effectuate judicial

approval of the Settlement Agreement, the Motion for Leave to Send Notice to, and Re-Open the Opt-in Period for, Group 2, and the content of the proposed Notices to Group 2. The parties agree this settlement is contingent upon both the approval of the Settlement Agreement and the Motion for Leave to Send Notice to, and Re-Open the Opt-in Period for, Group 2, and should the Court not approve either in its entirety, the Parties agree to engage in follow-up negotiations with the intent of resolving the Court's concerns that precluded initial approval, if feasible, and resubmitting settlement for approval within thirty (30) days. If the settlement is not approved as resubmitted or if the parties are not able to reach another agreement, litigation of the Lawsuit resumes. If litigation of the Lawsuit resumes, the case will proceed as if no settlement has been attempted, the Parties will jointly request a final discovery period, and Publix will retain the right to contest whether this case, as it existed immediately before the Parties entered into a tentative settlement agreement, should be maintained as a collective action and to contest the merits of all claims being asserted.

5.   <u>Form and Content of Notice and Settlement Payment</u>.  The form, content, and timing of notice and settlement payment will depend on Group:

(a)   Members of Group 1 will receive, subject to Court approval, a Notice of Settlement.  At the same time they receive the Notice of Settlement, members of Group 1 will receive a settlement check for their individual settlement payments, calculated as specified in Paragraph 3.  The back of the settlement check will contain the following language below the endorsement/signature line: "By signing, endorsing, depositing, cashing, and/or negotiating this check, I hereby understand and agree to the release of claims as set forth in Section [to be filled in

consistent with Notice of Settlement] of the Notice I was provided." The check also will include a notice stating that it expires 120 days after the date it is issued; however, a Group 1 member's entitlement to his or her amount is not extinguished by failure to cash the issued check within the 120 day period. Any settlement check amounts not cashed or claimed by a Group 1 member within the 120 day period will be subject to the unclaimed property laws of the Group 1 member's last known state of residence as specified in Paragraph 8.

(b)     Members of Group 2A will receive, subject to Court approval, a Notice of Settlement Offer. In addition, members of Group 2A will receive a letter alerting them to the settlement offer and urging them to consider it, the contents of which shall be subject to Plaintiffs' confirmation as to accuracy and consistency with this Agreement. Notwithstanding the above, Publix shall retain the right and ability to communicate with currently-employed FWW Associates at its exclusive discretion regarding the reasons it settled this Lawsuit, and any changes to policies and procedures applicable to FWW Associates that it may in its discretion make. At the same time they receive the Notice of Settlement Offer and the letter, members of Group 2A will receive a settlement check for their individual settlement payments, calculated as specified in Paragraph 3. The back of the settlement check will contain the following language below the endorsement/signature line: "By signing, endorsing, depositing, cashing, and/or negotiating this check, I hereby consent to join as a party the collective action in *Ott v. Publix*, Case No. 3:12-cv-00486 (M. D. Tenn.) pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). I further understand and agree to the release of

claims as set forth in Section [to be filled in consistent with Notice of Settlement Offer] of the Notice I was provided." Checks signed, endorsed, deposited, cashed, and/or negotiated (including by mobile or remote deposit by phone) by members of Group 2A will serve as such member's consent to opt into the Lawsuit pursuant to FLSA § 216(b) in addition to a release of their claims pursuant to the applicable release set forth below. The check will contain a notice stating that it expires 120 days after the date it is issued.

(c)   Members of Group 2B will receive, subject to Court approval, a Notice of Settlement Offer and an Opt-in and Release Form. In addition, Members of Group 2B will receive a letter in the form approved by the Court, which accurately summarizes the gross offer amount and the resulting net amount after the withholding required by law or order of court, arbitrator, or administrative body, including but not limited to orders of garnishment, that would be received if the offer were accepted. Notwithstanding the above, Publix shall retain the right and ability to communicate with currently-employed FWW Associates at its exclusive discretion regarding the reasons it settled this Lawsuit, and any changes to policies and procedures applicable to FWW Associates that it may in its discretion make. Members of Group 2B will be required to sign and file the Opt-in and Release Form with the Court, by returning the signed Opt-in and Release Form to the Claims Administrator to be processed for filing with the Court, confirming their intent to join the Lawsuit and release their claims pursuant to the applicable release set forth below, prior to Publix issuing any payment to that member, or another related person or entity.

6. <u>Settlement Administrator</u>.  If the Court grants approval of this Settlement Agreement, the settlement will be administered by Dahl Administration, a third-party administrator ("Settlement Administrator").  Fees and expenses of the Settlement Administrator shall be paid out of the Settlement Amount, as specified in Paragraph 3.  The Settlement Administrator shall be required to agree to a reasonable not-to-exceed cap for all fees and expenses for claims administration work.

7. <u>Settlement Administration</u>.  The parties agree to the following procedure for settlement administration, unless superseded by applicable court order:

    (a)    Within twenty (20) days after the Court approves the Settlement Agreement, Defendant will provide the names, addresses, and Social Security Numbers of all individuals in Group 1 and Group 2 to the Settlement Administrator ("Contact Information").  Plaintiffs' Counsel will also provide the Settlement Administrator with its most updated list of mailing and email addresses for the Group 1 members, which updated information shall be used if in conflict with the Contact Information provided by Defendant.  The Settlement Administrator will make reasonable efforts to obtain valid current addresses for individuals in Group 1 and Group 2 through the national change of address database, or other similar database approved by Plaintiffs, prior to any mailing required under this Agreement.  Defendant will provide its best information to and cooperate with the Settlement Administrator to respond to any reasonable inquiries from the Settlement Administrator necessary to complete its responsibilities under this Paragraph.  Any and all information, including Social Security Numbers, provided by Defendants shall be held in confidence, retained in an electronically

secure manner, and shall be used solely for purposes of effectuating this Settlement Agreement.

(b)     Within forty (40) days after the Court approves the Settlement Agreement or by January 27, 2015, whichever is later, Defendant will provide Plaintiffs' Counsel with its final calculations, in a readable and workable  format inclusive of applicable formula functions such as a Microsoft Excel spreadsheet or Microsoft Access database, as necessary for Plaintiffs' Counsel to validate the accuracy of the data and calculations regarding each eligible member's pro rata amount calculated as described in Paragraph 3, before Defendant's issuance of checks. The information provided to Plaintiffs will include the dates during the period relevant to the Lawsuit that FWW Associates were employed as FWW Associates, annual overtime pay received by FWW Associates during the period relevant to the Lawsuit that they were employed as FWW Associates, and the payments calculated pursuant to Paragraph 3.

(c)     Within fifty (50) days after the Court approves the Settlement Agreement or by February 13, 2015, whichever is later, Defendant will provide all settlement checks payable to Group 1 and Group 2A, calculated as described in Paragraph 3, to the Settlement Administrator.

(d)     Within ten (10) days after receiving settlement checks from Defendant, the Settlement Administrator shall send by First Class Mail (and, for Group 1, also by email as applicable) the Notices specified in Paragraph 5.  As part of the same mailing by First Class Mail, the Settlement Administrator will include, as

Case 3:12-cv-00486   Document 247-1   Filed 02/03/15   Page 13 of 28 PageID #: 7176

applicable, settlement checks for Groups 1 and 2A, the letter to Group 2 members in the form approved by the Court, and the Opt-In and Release Form to Group 2B.

(e)     Members of Group 2B will have a deadline of one-hundred-twenty (120) days from mailing in which to fully execute and return the Opt-In and Release Form ("Group 2B Opt-In Deadline"). Opt-In and Release Forms must be returned to the Settlement Administrator via U.S. First Class Mail and be postmarked by the Group 2B Opt-In Deadline, which shall be specified in the settlement Notice, to be timely. The parties may, by mutual agreement, agree to extend the Group 2B Opt-In Deadline.

(f)     Within 75 days from the date checks are issued, Defendant will provide the Settlement Administrator with copies of cancelled checks, where cancelled checks are available, including the endorsement on the back of the check or other proof of endorsement, for all checks to Group 1 or 2A that were cashed or paid in the first 55 days after the checks are issued. Where cancelled checks are not available, Defendant will provide other proof that payment was made to Group 1 and Group 2A as required by the Settlement Administrator for validation. Within 140 days from the date the checks are issued, Defendant will provide the Settlement Administrator with copies of cancelled checks, where cancelled checks are available, including the endorsement on the back of the check or other proof of endorsement, for all remaining checks cashed by members of Group 1 and Group 2A. Where cancelled checks are not available, Defendant will provide other proof that payment was made to Group 1 and Group 2A as required by the Settlement Administrator for validation. The Settlement Administrator will

Case 3:12-cv-00486   Document 247-1   Filed 02/03/15   Page 14 of 28 PageID #: 7177

validate and confirm payment and make this information available to Plaintiffs' Counsel so Group 2A's consents can be filed with the Court. On a rolling basis, the Settlement Administrator will provide copies of Opt-In and Release Forms from Group 2B to Plaintiffs' Counsel in a filing-ready format. Plaintiffs' Counsel will file with the Court all timely returned consents from Groups 2A and 2B within a reasonable time after receipt from the Settlement Administrator.

(g) Within 75 days from the date Opt-In and Release Forms are mailed to Group 2B members, Defendant will provide to the Settlement Administrator settlement checks, calculated as described in Paragraph 3, payable to Group 2B members whose Opt-In and Release Forms were filed with the Court no fewer than 20 days prior. Within 140 days from the date Opt-In and Release Forms are mailed to Group 2B members, Defendant will provide to the Settlement Administrator settlement checks, calculated as described in Paragraph 3, payable to all remaining Group 2B members whose Opt-In and Release Forms were timely received for filing with the Court. In the event Defendant fails to provide a settlement check by the dates described in this subparagraph (g) due to inadvertent payroll error, the error will be cured and the settlement check will be issued with reasonable promptness. The Settlement Administrator will send these settlement checks to Group 2B members within five (5) days of receipt from Defendant.

(h) The Settlement Administrator's duties shall also include providing periodic updates to the parties' counsel regarding participation, skip tracing using the provided Contact Information for current accurate mailing addresses and

remailing(s) for any mailings returned undeliverable, responding to class member inquiries, analysis of Group 2 Opt-In and Release Forms and advising class members of deficiencies, and validating a Participating Plaintiff's claim of lost or destroyed check(s) before notifying Defendant of stop payments and requiring issue of replacement checks for such lost or destroyed check(s).

8.  Unclaimed Settlement Amounts.  Any settlement amounts that remain unclaimed by any Group 1 member will be subject to the unclaimed property laws of the Group 1 member's last known state of residence, and the party in possession of the unclaimed funds (if a returned undeliverable tangible check, the Claims Administrator; as to any other unclaimed funds, Defendant) will comply with reporting and remittance obligations under such applicable unclaimed property laws, and shall within twenty (20) days after the date 120 days passed from the date the checks were issued provide a list to Plaintiffs' Counsel of checks not delivered or not cashed after more than 120 days have passed from the date the checks are issued.  Any offered settlement amounts that remain unclaimed by any Group 2 member after 120 days from the date checks were issued will be retained by Defendant, after processing any required reversal/correction of tax reporting and tax withholdings in accordance with Defendant's payroll policies for withdrawn or cancelled wage payments.

9.  Service Payments.  Plaintiffs' Counsel will apply for, and Defendant will not object to, service payments in the amount of $7,500 to Amanda Ott, $2,500 to Bruce Bogach, and $2,500 to April White.  Plaintiffs' Counsel will also apply for, and Defendant will not object to, service payments in the amount of (a) $200 to members of Group 1, excluding Ott, Bogach, and White, who participated in a deposition in the Lawsuit; and (b) $100 to

members of Group 1, excluding Ott, Bogach, and White, who previously answered written discovery in the Lawsuit, which was tendered to Defendant. Service payments will be taken from the settlement amount allocated to Group 1 before calculation of individual settlement payments, and any amounts not approved will be added back to the amount allocated to Group 1.

10.     Attorneys' Fees, Costs and Expenses.  Plaintiffs' Counsel will request approval for, and Publix expressly agrees not to oppose such request, a fee award of up to 6/27ths of the Settlement Amount (approximately $6.6 million), which fee amount awarded by the Court will come out of the Settlement Amount as specified in Paragraph 3.  If the Court denies any portion of requested fees, the unawarded amount will be added to the fund to be distributed to the settlement class members as follows: one-third of any unawarded amount will be allocated to Group 1 and two-thirds of any unawarded amount will be available to Group 2.

11.     Mediation Costs.  Defendant will, separate from the Settlement Amount, pay all reasonable costs and expenses from JAMS and Michael Loeb.

12.     Release.  By operation of the entry of the Court Order, and except as to such rights or claims as created by this Agreement, the Named Plaintiffs; the Current Plaintiffs; those members of Group 2A who accept the settlement offer by consenting to join the Lawsuit by signing or otherwise depositing, cashing, and/or endorsing (including by mobile or remote deposit by phone) the settlement payment check; and those members of Group 2B who accept the settlement offer by consenting to join the Lawsuit by signing and submitting an Opt-in and Release Form postmarked by the Group 2B Opt-In Deadline, forever and fully release Defendant, its owners, stockholders, predecessors, successors,

assigns, agents, directors, officers, employees, representatives, attorneys, parent companies, divisions, subsidiaries, affiliates, benefit plans, plan fiduciaries and/or administrators, and all persons acting by, through, under or in concert with any of them, including any party that was or could have been named as a defendant in the Lawsuit (collectively, the "Releasees") from any and all past and present matters, claims, demands, causes of action, and appeals of any kind, whatsoever, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, local, or other applicable law, which any such individual has or might have, known or unknown, of any kind whatsoever, that are allowed by law for claims brought in the Lawsuit for pay periods worked as a FWW Associate, and/or any other claims, under federal, state, or local law, that could have been brought that arise from or relate to the alleged failure to pay overtime in the pay periods worked as FWW Associates ("Released Claims"). The Released Claims include without limitation claims asserted in the Lawsuit and any other claims that could have been brought that arise from or relate to the alleged failure to pay overtime in the pay periods worked as FWW Associates, including, without limitation, claims under the Fair Labor Standards Act and the statutes, laws, and regulations of all states relating to the foregoing alleged failure to pay overtime in the pay periods worked as FWW Associates. Notwithstanding the foregoing, Released Claims shall not include any claims pending currently in the case *April White, et al. v. Publix Super Markets, Inc.*, No. 3:14-cv-001189 (M.D. Tenn.), and this Agreement does not cover, limit, or in any way involve Publix's discretion with respect to its 401(k) plan and Employee Stock Ownership Plan obligations consistent with the terms of those plans. The only claims released by Participating Plaintiffs are the

Case 3:12-cv-00486   Document 247-1   Filed 02/03/15   Page 18 of 28 PageID #: 7181

Released Claims, and the assertion or settlement of Released Claims in this Lawsuit shall have no claim preclusion effect on any claims other than Released Claims.

Any individual's Released Claims include all time periods through the release effective date for his or her Group ("Release Effective Date"). The Release Effective Date for Group 1 members is the later of the date that the Court grants approval of the settlement, or January 15, 2015. The Release Effective Date for Group 2A members who accept the settlement offer is the date he or she signs or otherwise deposits, cashes, and/or endorses (including by mobile or remote deposit by phone) the settlement payment check containing release language as set forth in Paragraph 5. The Release Effective Date for Group 2B members who accept the settlement offer is the date he or she files an Opt-In and Release Form with the Court as set forth in Paragraph 5.

Group 2A and Group 2B Members who do not accept the offer to participate in the settlement will not release claims. In addition, each Participating Plaintiff hereby irrevocably and unconditionally releases, acquits, and forever discharges any claim that he or she may have against Released Parties for attorneys' fees, costs, or expenses arising out of his or her claims filed the Lawsuit. Each Participating Plaintiff further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees, costs, and expenses for his or her claims filed in the Lawsuit.

13.    Timing of Settlement Administration and Attorneys' Fees Payments.    Defendant will deliver to the Settlement Administrator the administrative costs of settlement within twenty (20) days of settlement approval. Defendant will deliver to Plaintiffs' Counsel Court-approved attorneys' fees, costs, and expenses within twenty (20) days of court

approval.

14.  <u>Tax Treatment</u>.  For tax purposes, 50% of each Participating Plaintiff's payment pursuant to Paragraph 3 shall be treated as wages and 50% of such payment shall be treated as liquidated damages and interest.  In addition, 50% of any service payment pursuant to Paragraph 9 shall be treated as wages and 50% of such payment shall be treated as liquidated damages and interest.  Publix will withhold from each Participating Plaintiff's settlement payment amount that is treated as wages all applicable federal, state, and local income and employment taxes, and shall report that portion to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2.  The portion of each Participating Plaintiff's settlement payment that is treated as liquidated damages and interest are not wages and shall be paid without withholding, and shall be reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099, in Box 3 (or other similar box should the IRS change the form).  Attorneys' fees and costs paid pursuant to Paragraph 10 are not wages and are designated as attorney's fees and costs, and shall be paid without withholding and shall be reported to the IRS by IRS Form 1099 in Box 14 (or other similar box should the IRS change the form).  The settlement amounts paid to Plaintiffs' Counsel for fees and costs constitute payment of Plaintiffs' attorneys' fees and costs on claims under the FLSA and therefore are within the definition of 26 U.S.C. § 62(e)(4) and subject to the provisions of 26 U.S.C. § 62(a)(20) of the Internal Revenue Code. Defendant will pay all payroll taxes imposed on it by applicable law, including the employer's share of the FICA tax and any federal and state unemployment tax, with respect to the amounts treated as wages.  Each Participating Plaintiff agrees that he or she

shall be solely responsible for all taxes, interest, and penalties due with respect to any payment received by him or her pursuant to this Settlement Agreement (other than the employer payroll taxes specified in the immediately preceding sentence or any taxes, interest, or penalties deemed owed by Defendant arising out of Defendant's failure to comply with its tax/payment reporting obligations ("employer obligations")) and shall indemnify, defend and hold Defendant harmless from and against any and all taxes, interest, penalties, attorneys' fees and other costs imposed on Defendant as a result of that Participating Plaintiff's failure to timely pay such taxes that were not employer obligations.  This indemnification provision and any release in this Agreement does not cover Defendant's post-Agreement tax/payment reporting actions or obligations.  This Agreement does not cover, limit, or in any way involve Publix's discretion with respect to its 401(k) plan and Employee Stock Ownership Plan obligations consistent with the terms of those plans.  Per Treasury Department Circular 230, this Agreement is not intended to provide tax advice, and any tax advice contained in this Agreement or any notice summarizing this Agreement is not intended to be used, and cannot be used, for the purpose of avoiding penalties under the Internal Revenue Code or promoting, marketing, or recommending to another party any transaction or matter addressed herein.

15. <u>No Admission of Liability or Appropriateness of Class Treatment</u>. By entering into this Settlement Agreement, Defendant admits no liability of any kind, and Defendant expressly denies any liability or wrongdoing.  The parties further agree that this Settlement Agreement does not constitute a determination or admission that any group of similarly situated employees exists to maintain a collective action under the FLSA, and in the event that this Settlement Agreement or a subsequent settlement in the Lawsuit by the

Case 3:12-cv-00486   Document 247-1   Filed 02/03/15   Page 21 of 28 PageID #: 7184

parties is not approved by the Court after satisfaction of the procedures set forth in Section 4, the parties agree that they will return to the status quo ante and that Publix may argue that collective treatment is not proper under the FLSA. This Settlement Agreement shall not be admissible in any court or other proceeding except as necessary in connection with a claim of breach of this Settlement Agreement, an effort to enforce this Settlement Agreement, or for resolution of tax or other legal issues arising from a payment under this Settlement Agreement.

16.    <u>No Confidentiality, Publicity</u>. Plaintiffs and Plaintiffs' Counsel will not initiate any press release or initiate any contact with the media, nor shall they respond to inquiries from the media with respect to this Settlement Agreement other than to confirm to the media, if contacted, that information is available through public records. Plaintiffs will update the existing http://publixovertimeclass.com website to attach the joint motion for approval and any Order issued by the Court and to accurately describe the status of the case, the content of which description shall be subject to Defendant's confirmation as to accuracy and consistency with this Settlement Agreement, which shall not be unreasonably withheld. Plaintiffs' counsel may update their law firm web site(s) by adding the Lawsuit case name, case number, the summary of claims alleged from the Court-approved notice, and may indicate that the case was "resolved" or "settled" with a "for more information" link to the existing http://publixovertimeclass.com website, without specifying the gross Settlement Amount on their law firm web site(s).

17.    <u>Continuing Jurisdiction</u>. The U.S. District Court for the Middle District of Tennessee shall retain continuing and exclusive jurisdiction over the parties to this Settlement Agreement for the purpose of the administration and enforcement of this Settlement

Agreement. Any dispute, challenge, question, or the like relating to this Settlement Agreement shall be heard only by this Court, unless the Court rules that it will not hear any such dispute, challenge, question, or the like relating to this Settlement Agreement.

18. <u>Choice of Law</u>. The enforcement of this Settlement Agreement shall be governed and interpreted by and under the laws of the State of Tennessee whether or not any party is, or may hereafter be, a resident of another state.

19. <u>Extension of Time</u>. The parties may, by mutual agreement, agree upon a reasonable extension of time for deadlines and dates reflected in this Settlement Agreement, without further notice to the Court, subject to Court approval.

20. <u>No Waivers, Modifications, Amendments</u>. No waiver, modification or amendment of this Settlement Agreement, whether purportedly made before or after the Court's approval of this Settlement Agreement, shall be valid or binding unless in writing, signed by or on behalf of all parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Settlement Agreement shall not be deemed a waiver of any of the other provisions of this Settlement Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of all of the provisions of this Settlement Agreement.

21. <u>Severability</u>. This Settlement Agreement shall be deemed severable, and the invalidity or unenforceability of any one or more of its provisions shall not affect the validity or enforceability of any of the other provisions.

22. <u>Sole and Entire Agreement</u>.  This Settlement Agreement constitutes the entire agreement of Defendant and the Participating Plaintiffs concerning the subjects contained herein, and all prior and contemporaneous negotiations and understandings between those parties shall be deemed merged into this Settlement Agreement; except, however, that this Agreement shall have no effect on or be affected by any prior settlement or other agreement entered into between Defendant and any Participating Plaintiff regarding payment for all or part of any claims released herein.

23. <u>Counterparts</u>.  This Settlement Agreement shall become effective upon its execution, subject to subsequent Court approval.  The parties may execute this Settlement Agreement in counterparts, and execution in counterparts shall have the same force and effect as if the Named Plaintiffs and Defendant had signed the same instrument.  Any signature made and transmitted by facsimile to execute this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement and shall bind the signing party.

24. <u>Corporate Signatories</u>.  Each person executing this Settlement Agreement on behalf of any party hereto warrants that such person has the authority to do so, subject to applicable court approval.  Any person executing this Settlement Agreement on behalf of a corporate signatory hereby warrants and promises for the benefit of all parties hereto that such person is duly authorized by such corporation to execute this Settlement Agreement.

25. <u>Captions</u>.  The captions or headings of the paragraphs in this Settlement Agreement are inserted for convenience or reference only and shall have no effect upon the construction of interpretation of any part of this Settlement Agreement.

[signature page follows]

THE FOREGOING SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

_____
Amanda Ott

Dated this 30th day of January, 2015.

THE FOREGOING SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

_____
**Bruce Bogach**

Dated this ____ day of_____, 2015.

THE FOREGOING SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

_____
**April White**

Dated this ____ day of_____, 2015.

Case 3:12-cv-00486   Document 247-1   Filed 02/03/15   Page 25 of 28 PageID #: 7188

THE FOREGOING SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

_____
**Amanda Ott**

Dated this ____ day of _____, 2015.

THE FOREGOING SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

_____
**Bruce Bogach**

Dated this 30 day of January, 2015.

THE FOREGOING SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

_____
**April White**

Dated this ____ day of _____, 2015.

THE FOREGOING SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

_____
**Amanda Ott**

Dated this ____ day of _____, 2015.

THE FOREGOING SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

_____
**Bruce Bogach**

Dated this ____ day of _____, 2015.

THE FOREGOING SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

_____
**April White**

Dated this 2nd day of February, 2015.

-24-

THE FOREGOING SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS HAS BEEN READ AND FULLY UNDERSTOOD BEFORE THE SIGNING OF THIS AGREEMENT.

**Publix Super Markets, Inc.**

Date: 2/2/15

By: _William E. Crenshaw_

Printed Name: William E. Crenshaw

Title: CEO